**Exhibit A**

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

*ForeFront Portfolio*[SM]
**General Terms and Conditions Section**

DECLARATIONS

**FEDERAL INSURANCE COMPANY**

*Home Office*:    Capitol Center 251
North Illinois Suite 1110
Indianapolis, Indiana 46204

*Mailing Address*:    82 Hopmeadow Street
Simsbury, Connecticut 06070-7683

**Policy Number: 8181-1088**

THE LIABILITY COVERAGE SECTIONS (WHICHEVER ARE PURCHASED) PROVIDE CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED UNLESS OTHERWISE PROVIDED HEREIN, BY "DEFENSE COSTS," AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT. READ THE ENTIRE POLICY CAREFULLY.

**Item 1.**   **Parent Corporation:**
Principal Address:

LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.
11 LLOYD AVENUE
LATROBE, PA 15650

**Item 2.**   **Policy Period:**

(A)    From 12:01 A.M. on    July 12, 2005
(B)    To 12:01 A.M. on    July 12, 2006
Local time at the address shown in Item 1.

**Item 3.**   **A Combined Maximum Aggregate Limit of Liability option is only available if indicated by X:**

[X] Yes  [ ] No    The Combined Maximum Aggregate Limit of Liability for all **Claims** under all **Claims** under all **Liability Coverage Sections** shall be: $7,500,000.00

**Item 4.**   **Coverage is only available for the following if indicated by X:**

[X] Yes  [ ] No    Directors & Officers Liability Coverage Section

[X] Yes  [ ] No    Employment Practices Liability Coverage Section

[X] Yes  [ ] No    Fiduciary Liability Coverage Section

[ ] Yes  [X] No    Miscellaneous Professional Liability Coverage Section

[X] Yes  [ ] No    Internet Liability Coverage Section

☒ Yes ☐ No    Crime Non-Liability Coverage Section

☐ Yes ☒ No    Kidnap/Ransom & Extortion Non-Liability Coverage Section

☐ Yes ☒ No    Workplace Violence Expense Non-Liability Coverage Section

**Item 5.    Extended Reporting Period:**

(A) Additional Period:              (B) Additional Premium:

365 day                             100    % of Annual Premium
N/A            Year(s)              N/A    % of Annual Premium
N/A            Year(s)              N/A    % of Annual Premium

**Item 6.    Termination of prior policies:**

8181-1088 (July 12, 2004 - July 12, 2005)

In witness whereof, the Company issuing this Policy has caused this Policy to be signed by its authorized officers, but it shall not be valid unless also signed by a duly authorized representative of the Company.

FEDERAL INSURANCE COMPANY

_____
Secretary

_____
President

_____
Authorized Employee

07/15/05
_____
Date

In consideration of payment of the premium and subject to the Declarations and the limitations, conditions, provisions and other terms of this Policy, the Company and the Insureds agree as follows:

## I. TERMS AND CONDITIONS

Except for these General Terms and Conditions or unless stated to the contrary in any Coverage Section of this Policy, the terms and conditions of each Coverage Section apply only to that Coverage Section. If any provision in these General Terms and Conditions is inconsistent or in conflict with the terms and conditions of any Coverage Section, the terms and conditions of such Coverage Section shall control for purposes of that Coverage Section. Any defined term referenced in these General Terms and Conditions but defined in a Coverage Section shall, for purposes of coverage under that Coverage Section, have the meaning set forth in that Coverage Section.

## II. GENERAL DEFINITIONS

(A)   **Anniversary Date** means that date and time exactly one (1) year after the date and time set forth in Item 2(A) of the Declarations of these General Terms and Conditions, and each succeeding date and time exactly one (1) year after the previous **Anniversary Date**.

(B)   **Claim** shall have the meaning ascribed to that term in each **Liability Coverage Section**.

(C)   **Coverage Event** means the event or loss which must occur, be sustained or discovered in order to invoke coverage under each **Non-Liability Coverage Section**.

(D)   **Debtor in Possession** means a debtor in possession as such term is used in Chapter 11 of the United States of America Bankruptcy Code.

(E)   **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the **Insured Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

(F)   **Financial Impairment** means the status of an **Insured Organization** resulting from:

   (1)   the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Insured Organization**; or

   (2)   such **Insured Organization** becoming a **Debtor in Possession**.

(G)   **Insured** means all organizations, plans and natural persons defined as **Insureds** in each Coverage Section.

(H)   **Insured Organization** means the **Parent Corporation** and any **Subsidiary** created at any time or any **Subsidiary** acquired on or before the inception date as set forth in Item 2(A) of the Declarations of these General Terms and Conditions, or subject to Section XI Changes in Exposure of these General Terms and Conditions, during the **Policy Period**. **Insured Organization** shall also mean any such entity as a **Debtor in Possession** or an equivalent status under the law of any other country.

(I) **Insured Person** shall have the meaning ascribed to that term in each Coverage Section. Solely with respect to any **Liability Coverage Section**, coverage for an **Insured Person** shall also include coverage for:

    (1) the lawful spouse of such **Insured Person**, if named as a co-defendant with such **Insured Person** solely by reason of such spouse's status as a spouse, or such spouse's ownership interest in property, which is sought by the claimant as recovery for an alleged **Wrongful Act** of such **Insured Person**; and

    (2) in the event of the death, incapacity or bankruptcy of an **Insured Person**, the estate, heirs, legal representatives or assigns of such **Insured Person**;

but any such coverage shall apply only with respect to a **Wrongful Act** of such **Insured Person**. All terms and conditions of this Policy, including without limitation, the Deductible Amount applicable to **Loss** incurred by the **Insured Person**, shall also apply to loss incurred by such spouses, estates, heirs, legal representatives and assigns of such **Insured Person**.

(J) **Liability Coverage Section** means the Directors & Officers Liability, Employment Practices Liability, Fiduciary Liability, Miscellaneous Professional Liability and the Internet Liability Coverage Sections of this Policy, if purchased as set forth in Item 4 of the Declarations of these General Terms and Conditions.

(K) **Loss**:

    (1) with respect to any **Liability Coverage Section**, shall have the meaning ascribed to that term in such Coverage Section; or

    (2) with respect to any **Non-Liability Coverage Section**, means the total amount covered under such Coverage Section as a result of any **Coverage Event**.

(L) **Non-Liability Coverage Section** means the Crime, Kidnap/Ransom and Extortion and Workplace Violence Expense Coverage Sections of this Policy, if purchased as set forth in Item 4 of the Declarations of these General Terms and Conditions.

(M) **Parent Corporation** means the entity named in Item 1 of the Declarations of these General Terms and Conditions.

(N) **Policy Period** means the period of time set forth in Item 2 of the Declarations of these General Terms and Conditions, subject to any prior termination in accordance with Section XIX Termination of Policy of these General Terms and Conditions.

(O) **Policy Year** means the period, within the **Policy Period**, from the date and time set forth in Item 2(A) of the Declarations of these General Terms and Conditions to the first **Anniversary Date**, or the period from an **Anniversary Date** to its next succeeding **Anniversary Date**, subject to any prior termination as set forth in Section XIX Termination of Policy of these General Terms and Conditions.

(P) **Potential Employment Claim** means a complaint or allegation of a **Wrongful Act** in connection with **Discrimination**, **Harassment**, **Retaliation**, **Workplace Tort** or **Wrongful Employment Decision** that does not constitute an **Employment Claim** but which may subsequently give rise to an **Employment Claim** brought by or on behalf of an **Insured Person** that is lodged with the **Insured Organization's** human resource department or other department that provides a function similar to a human resource department. Solely with respect to this Definition (P), the terms **Wrongful Act**, **Discrimination**, **Harassment**, **Retaliation**, **Workplace Tort**, **Wrongful**

Employment Decision, Employment Claim and Insured Person shall have the meaning ascribed to them in the Employment Practices Liability Coverage Section.

(Q)     Potential Third Party Claim means a complaint or allegation of a Wrongful Act in connection with Third Party Discrimination or Sexual Harassment that does not constitute a Third Party Claim but which may subsequently give rise to a Third Party Claim brought by or on behalf of a Third Party that is lodged with the Insured Organization's legal department or an individual responsible to receive such complaints or allegations. Solely with respect to this Definition (Q), the terms Wrongful Act, Third Party Discrimination or Sexual Harassment, Third Party Claim or Third Party shall have the meaning ascribed to them in the Employment Practices Liability Coverage Section.

(R)     Related Claims means all Claims for Wrongful Acts based upon, arising from, or in consequence of the same or related facts, circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events.

(S)     Subsidiary means:

   (1)   any entity during any time in which the Parent Corporation owns or controls, directly or through one or more Subsidiaries, the right to elect or appoint more than fifty percent (50%) of such entity's directors or trustees;

   (2)   any limited liability company during any time in which the Parent Corporation owns or controls, directly or through one or more Subsidiaries, the right to elect, appoint or designate more than fifty percent (50%) of such entity's managers;

   (3)   any corporation during any time in which the Parent Corporation owns, directly or through one or more Subsidiaries, exactly fifty percent (50%) of the issued and outstanding voting stock and which, pursuant to a written agreement with the owner(s) of the remaining issued and outstanding voting stock of such corporation, the Parent Corporation solely controls the management and operation of such corporation ("Controlled Joint Venture"); and

   (4)   any foundation, charitable trust or political action committee during any time in which such entity or organization is controlled by the Parent Corporation.

(T)     Wrongful Act shall have the meaning ascribed to that term in each Liability Coverage Section.

---

III.     TERRITORY

Coverage shall extend anywhere in the world.

---

IV.     EXTENDED REPORTING PERIOD

(A)     If any Liability Coverage Section is either terminated or not renewed for any reason other than nonpayment of premium, any Insured Organization or any Insured Person shall have the right to purchase an Extended Reporting Period for one of the periods set forth in Item 5(A) of the Declarations of these General Terms and Conditions. This right to purchase an Extended Reporting Period shall lapse unless written notice of the desired Extended Reporting Period, together with payment of the additional applicable premium due as set forth in Item 5(B) of the Declarations of these General Terms and Conditions is received by the Company within sixty (60) days after the end of the Policy Period.

(B)  If the Extended Reporting Period is purchased, then coverage otherwise afforded by such **Liability Coverage Section** will be extended to apply to **Loss** from **Claims** first made during such Extended Reporting Period but only for **Wrongful Acts** committed or allegedly committed before the end of the **Policy Period** or the date of any conversion of coverage described in Section XI Changes in Exposure of these General Terms and Conditions, whichever is earlier. The entire additional premium for the Extended Reporting Period shall be deemed fully earned at the inception of such Extended Reporting Period. The Limit of Liability for the Extended Reporting Period shall be part of and not in addition to the applicable Limits of Liability for the **Policy Year** immediately preceding the expiration of the **Policy Period**.

## V.  LIMIT OF LIABILITY

(A)  Solely with respect to all **Liability Coverage Sections**:

(1)  If the combined maximum aggregate Limit of Liability for all **Liability Coverage Sections** is purchased, as set forth in Item 3 of the Declarations of these General Terms and Conditions, such amount shall be the combined maximum aggregate liability of the **Company** for all **Loss** from all **Claims** first made during each **Policy Year** under all **Liability Coverage Sections** combined, regardless of the number of **Claims**; provided that, the maximum aggregate liability of the **Company** for all **Loss** from all **Claims** first made during each **Policy Year** under each **Liability Coverage Section** shall not exceed the respective maximum aggregate Limit of Liability as set forth in Item 2 of the Declarations for each applicable **Liability Coverage Section**, regardless of the number of **Claims**. If the maximum aggregate Limit of Liability of any **Liability Coverage Section** as set forth in Item 2 of the Declarations for each applicable **Liability Coverage Section**, is less than the combined maximum aggregate Limit of Liability for all **Liability Coverage Sections** as set forth in Item 3 of the Declarations of these General Terms and Conditions, such lesser limit shall be a sublimit and such amount shall be part of, and not in addition to, the combined maximum aggregate Limit of Liability for all **Liability Coverage Sections** as set forth in Item 3 of the Declarations of these General Terms and Conditions.

(2)  If the combined maximum aggregate Limit of Liability for all **Liability Coverage Sections** is not purchased, as set forth in Item 3 of the Declarations of these General Terms and Conditions, the maximum aggregate liability of the **Company** for all **Loss** from all **Claims** first made during each **Policy Year** under each **Liability Coverage Section** shall be the respective maximum aggregate Limit of Liability as set forth in Item 2 of the Declarations for each applicable **Liability Coverage Section**, regardless of the number of **Claims**.

(3)  Except as otherwise expressly provided in any **Liability Coverage Section**, **Defense Costs** are part of and not in addition to the applicable maximum aggregate Limit of Liability as set forth in Item 2 of the Declarations for each applicable **Liability Coverage Section** and payment by the **Company** of **Defense Costs** shall reduce and may exhaust such Limit(s) of Liability.

(B)  Solely with respect to each **Non-Liability Coverage Section**, the **Company's** maximum liability shall be the respective Limit(s) of Liability described in the applicable **Non-Liability Coverage Section**.

## VI.  DEDUCTIBLE AMOUNT

(A)  Solely with respect to any **Liability Coverage Section**:

(1) The **Company's** liability with respect to **Loss** arising from each **Claim** covered under one or more **Liability Coverage Sections** shall apply only to that part of **Loss** which is in excess of the applicable Deductible Amount set forth in the Declarations of each applicable Coverage Section. If different parts of a single **Claim** are subject to different Deductible Amounts, the applicable Deductible Amounts will be applied separately to each part of such **Claim**, but the sum of such Deductible Amounts shall not exceed the largest applicable Deductible Amount. Such Deductible Amount shall be borne by the **Insureds** uninsured and at their own risk.

(2) No Deductible Amount shall apply to **Loss** incurred by any **Insured Person** for which the **Insured Organization** is not permitted by common or statutory law to indemnify, or is permitted or required to indemnify, but is not able to do so by reason of **Financial Impairment**.

(3) If the **Insured Organization** is permitted or required by common or statutory law to indemnify the **Insured Persons** for any **Loss**, or to advance **Defense Costs** on their behalf, under any **Liability Coverage Section** and fails or refuses to do so other than for reasons of **Financial Impairment**, then the **Insured Organization** shall reimburse and hold harmless the **Company** for the **Company's** payment or advancement of such **Loss** up to the amount of the applicable Deductible Amount.

(4) In the event that:

    (a) a final adjudication with prejudice pursuant to a trial, motion to dismiss or a motion for summary judgment of any **Claim**; or

    (b) a complete and final settlement with prejudice of any **Claim**;

establishes that none of the **Insureds** in such **Claim** are liable for any **Loss**, no Deductible Amount shall apply to **Defense Costs** incurred in connection with any such **Claim**, and the **Company** will reimburse the **Insureds** for any covered **Defense Costs** paid by the **Insureds** within the Deductible Amount otherwise applicable to such **Claim**; provided that this paragraph (4) shall not apply to any (i) **Employment Claim** or **Third Party Claim** which is not a class action, or (ii) **Professional Services Claim** (as such terms are defined in the applicable **Liability Coverage Sections**).

(B) Solely with respect to any **Non-Liability Coverage Section**:

(1) The **Company** shall pay loss that exceeds the amount of recoveries made prior to such payment, less the Deductible Amount set forth in the Declarations for the applicable **Non-Liability Coverage Section**.

(2) If the **Insured** receives payment under another policy or bond, after applying a deductible, for loss also covered hereunder, then the Deductible Amount set forth in the Declarations for the applicable **Non-Liability Coverage Section** shall be reduced by the deductible previously applied to such loss.

**VII.** **REPORTING**

(A) Solely with respect to any **Liability Coverage Section**:

(1) Any **Insured** shall, as a condition precedent to exercising their rights under any **Liability Coverage Section**, give to the **Company** written notice as soon as practicable of any **Claim**.

(2) If during the **Policy Period**, or any applicable Extended Reporting Period, an **Insured** becomes aware of a **Potential Employment Claim** or **Potential Third Party Claim** which could give rise to any **Employment Claim** or **Third Party Claim** (as such terms are defined in the Employment Practices Liability Coverage Section) or becomes aware of circumstances which could give rise to any **Claim**, other than an **Employment Claim** or a **Third Party Claim** (as such terms are defined in the Employment Practices Liability Coverage Section), and gives written notice of such **Potential Employment Claim**, **Potential Third Party Claim** or circumstances to the **Company** as soon as practicable thereafter but before the expiration or cancelation of this Policy, then any **Claim** subsequently arising from such **Potential Employment Claim**, **Potential Third Party Claim** or circumstances shall be considered to have been made against the **Insured** during the **Policy Year** in which the **Potential Employment Claim**, **Potential Third Party Claim** or circumstances were first reported to the **Company**.

(3) All **Insureds** shall, as a condition precedent to exercising their rights under this Policy, give to the **Company** such information and cooperation as it may reasonably require, including but not limited to a description of the **Claim**, **Potential Employment Claim**, **Potential**, **Third Party Claim** or circumstances, the nature of the alleged **Wrongful Act**, the nature of the alleged or potential damage, the names of the actual or potential claimants, and the manner in which such **Insured** first became aware of the **Claim**, **Potential Employment Claim**, **Potential Third Party Claim** or circumstances.

(4) All **Related Claims** will be treated as a single **Claim** made when the earliest of such **Related Claims** was first made, or when the earliest of such **Related Claims** is treated as having been made in accordance with paragraphs (2) and (3) above.

(B) Solely with respect to any **Non-Liability Coverage Section**, reporting of a **Coverage Event** shall be in accordance with the applicable Proof of Loss and Legal Proceedings Section of each Coverage Section.

---

**VIII.** **NOTICE**

(A) Any notice to the **Company** with respect to any Coverage Section shall designate the Coverage Section under which the notice is being given and shall be treated as notice under only the Coverage Section(s) so designated.

(B) All notices to the **Company** under this Policy of **Claims**, **Potential Employment Claims**, **Potential Third Party Claims** or circumstances under any **Liability Coverage Section** or of **Coverage Events** under any **Non-Liability Coverage Section** shall be given in writing addressed to:

> **Attn: Claims Department**
> Chubb Group of Insurance Companies
> 82 Hopmeadow St.
> Simsbury, CT 06070-7683

(C)     All other notices to the **Company** under this Policy shall be given in writing addressed to:

> **Attn: Underwriting**
> Chubb Group of Insurance Companies
> 82 Hopmeadow St.
> Simsbury, CT 06070-7683

(D)     Any such notice shall be effective on the date of receipt by the **Company** at such address.

---

## IX.    DEFENSE AND SETTLEMENT

(A)     Solely with respect to any **Liability Coverage Section**:

(1)     The **Company** shall have the right and duty to defend any **Claim** covered by this Policy. Coverage shall apply even if any of the allegations are groundless, false or fraudulent. The **Company's** duty to defend any **Claim** shall cease upon exhaustion of the applicable Limit of Liability.

(2)     The **Company** may make any investigation it deems necessary and may, with the consent of the **Insured**, make any settlement of any **Claim** it deems expedient. If any **Insured** withholds consent to any settlement acceptable to the claimant in accordance with the **Company's** recommendation (a "Proposed Settlement"), Section VI Deductible Amount (A)(4) shall not apply and the **Company's** liability for all **Loss**, including **Defense Costs**, from such **Claim** shall not exceed:

(a)     the amount of the Proposed Settlement plus **Defense Costs** incurred up to the date of the **Insured's** refusal to consent to Proposed Settlement of such **Claim**; plus;

(b)     seventy percent (70%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in paragraph (a) above, incurred in connection with such **Claim**; subject in all events to the applicable Deductible Amount and the available Limit of Liability set forth in the applicable Declarations. The remaining thirty percent (30%) of any **Loss**, including **Defense Costs**, in excess of the amount referenced in paragraph (a) above will be borne by the **Insured** uninsured and at its own risk, notwithstanding anything to the contrary contained in Section X Allocation.

(3)     No **Insured** shall settle any **Claim**, incur any **Defense Costs**, or otherwise assume any contractual obligation or admit any liability with respect to any **Claim** without the **Company's** written consent, which shall not be unreasonably withheld. The **Company** shall not be liable for any settlement, **Defense Costs**, assumed obligation or admission to which it has not consented.

(4)     The **Company** will have no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** after the **Company's** applicable Limit of Liability with respect to such **Claim** has been exhausted by the payment of **Loss**. If the **Company's** Limit of Liability is exhausted by the payment of **Loss** prior to the expiration of this Policy, the Policy premium will be deemed fully earned.

(5)     If the combined maximum aggregate Limit of Liability is purchased as set forth in Item 3 of the Declarations of these General Terms and Conditions, then the **Company** will have

no obligation to pay **Loss**, including **Defense Costs**, or to defend or continue to defend any **Claim** after the **Company's** combined maximum aggregate Limit of Liability has been exhausted by the payment of **Loss**. If the **Company's** combined maximum aggregate Limit of Liability is exhausted by the payment of **Loss** prior to the expiration of this Policy, the Policy premium will be deemed fully earned.

(B)     With respect to all Coverage Sections:

The **Insureds** agree to provide the **Company** with all information, assistance and cooperation which the **Company** reasonably requests and agree they will do nothing that may prejudice the **Company's** position or its potential or actual rights of recovery.

## X.     ALLOCATION

If, in any **Claim** under a **Liability Coverage Section**, the **Insureds** who are afforded coverage for such **Claim** incur an amount consisting of both **Loss** that is covered by this Policy and also loss that is not covered by this Policy because such **Claim** includes both covered and uncovered matters or covered and uncovered parties, then coverage shall apply as follows:

(1)     **Defense Costs**:  one hundred percent (100%) of reasonable and necessary **Defense Costs** incurred by such **Insured** from such **Claim** will be considered covered **Loss**; and

(2)     loss other than **Defense Costs**:  all remaining loss incurred by such **Insured** from such **Claim** will be allocated between covered **Loss** and uncovered loss based upon the relative legal exposures of the parties to such matters.

## XI.     CHANGES IN EXPOSURE

(A)     **Acquisition of Another Organization**

(1)     If any **Insured Organization** acquires another entity or merges with another entity (each an "Acquired Organization") such that the **Insured Organization** is the surviving entity, and if as a result of such acquisition or merger the Acquired Organization would otherwise become a **Subsidiary**, then coverage shall be provided for such Acquired Organization and its **Insureds**, with respect to any:

(a)     **Liability Coverage Section**: solely for **Wrongful Acts** committed or allegedly committed after the effective date of such event; or

(b)     **Non-Liability Coverage Section**: after the effective date of such event, pursuant to the Liability for Prior Losses Section of any such **Non-Liability Coverage Section**.

(2) If, at the time of an event described in paragraph (1) above:

(a) the assets under management by, or the assets of, the Acquired Organization exceed twenty-five percent (25%) of the total assets under management by or the total assets of, the **Insured Organization** as reflected in the **Parent Corporation's** then most recent audited consolidated financial statements; or

(b) solely with respect to the Employment Practices Liability Coverage Section, if purchased as set forth in Item 4 of the Declarations of these General Terms and Conditions, the total number of employees of the Acquired Organization exceeds twenty-five percent (25%) of the total number of employees of the **Insured Organization** immediately prior to such event;

then the **Parent Corporation** shall provide to the **Company** written notice of the event containing full details thereof, as soon as practicable, and the **Company**, in its sole discretion, may require additional terms, conditions and limitations of coverage and additional premium shall be paid.

(B) **Cessation of Subsidiaries**

If any **Subsidiary** ceases to be a **Subsidiary** before or during the **Policy Period**, then with respect to any:

(1) **Liability Coverage Section**: coverage under this Policy shall continue for such **Subsidiary** and its **Insureds** until the expiration of this Policy, but solely for **Claims** for **Wrongful Acts** committed or allegedly committed prior to the effective date of such cessation; or

(2) **Non-Liability Coverage Sections**: such **Subsidiary** and its **Insureds** cease to be **Insureds** as of the effective date of such cessation, and coverage under this Policy shall apply as provided in such **Non-Liability Coverage Section**.

(C) **Conversion of Coverage under Certain Circumstances**

If, during the **Policy Period**, any of the following events occur:

(1) the acquisition of all or substantially all of the **Parent Corporation's** assets, by another organization, person or group of organizations or persons acting in concert, or the merger or consolidation of the **Parent Corporation** into or with another entity such that the **Parent Corporation** is not the surviving entity; or

(2) another organization, person or group of organizations or persons acting in concert acquires securities or voting rights which results in ownership or voting control by the other organization(s) or person(s) of more than fifty percent (50%) of the outstanding securities representing the present right to vote for the election of directors, trustees, members of the Board of Managers or management committee members of the **Parent Corporation**;

coverage under this Policy shall, with respect to:

(a) any **Liability Coverage Section**: continue until the expiration of this Policy, solely for **Claims** for **Wrongful Acts** committed or allegedly committed prior to such event;

(b) the Crime Coverage Section: terminate subject to Exclusions (H) and (I) of such Coverage Section;

(c) the Kidnap/Ransom and Extortion Coverage Section: terminate subject to Exclusion (10) of such Coverage Section; or

(d) and the Workplace Violence Coverage Section: terminate subject to Exclusion (E) of such Coverage Section.

The **Parent Corporation** shall give written notice of such event to the **Company** as soon as practicable together with such information as the **Company** may require, and the entire premium for this Policy will be deemed fully earned as of such event.

---

**XII. REPRESENTATIONS AND SEVERABILITY**

(A) In granting coverage to the **Insureds** under this Policy, the **Company** has relied upon the declarations and statements in the written application(s) for this Policy. Such declarations and statements are the basis of the coverage under this Policy and shall be considered as incorporated in and constituting part of this Policy.

(B) Solely with respect to any **Liability Coverage Section(s)**, any written application(s) for coverage shall be construed as a separate application(s) for coverage by each **Insured Person**. With respect to the declarations and statements in such application(s):

(1) no fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** for the purpose of determining if coverage is available; and

(2) only facts pertaining to and knowledge possessed by the Chief Financial Officer, President, Chief Executive Officer or Chairperson of any **Insured Organization** or any other individual signing such application(s) shall be imputed to any **Insured Organization** for the purpose of determining if coverage is available.

---

**XIII. VALUATION AND FOREIGN CURRENCY**

All premiums, limits, deductibles, loss and other amounts under this Policy are expressed and payable in the currency of the United States of America. Except as otherwise provided in any Coverage Section, if a judgment is rendered, a settlement is denominated or any element of loss under this Policy is stated in a currency other than United States of America dollars, payment under this Policy shall be made in United States of America dollars at the rate of exchange published in *The Wall Street Journal* on the date the final judgment is reached, the amount of the settlement is agreed upon or any element of loss is due, respectively.

---

**XIV. SUBROGATION**

In the event of any payment under this Policy, the **Company** shall be subrogated to the extent of such payment to all the **Insured's** rights of recovery, and such **Insured** shall execute all papers required and shall do everything necessary to secure and preserve such rights, including the execution of such documents necessary to enable the **Company** effectively to bring suit or otherwise pursue subrogation rights in the name of such **Insured**.

## XV. RECOVERIES

(A)  Recoveries of loss with respect to any **Claim** or **Coverage Event**, whether effected by the **Company** or by an **Insured**, less the cost of recovery, shall be distributed as follows:

    (1)  first, to an **Insured** for the amount of such loss, otherwise covered, in excess of the applicable Limits of Liability;

    (2)  second, to the **Company** for the amount of such loss paid to an **Insured** as covered **Loss**;

    (3)  third, to an **Insured** for the Deductible Amount applicable to such loss;

    (4)  fourth, to an **Insured** for the amount of such loss excluded under this Policy.

(B)  Recovery from reinsurance or indemnity of the **Company** shall not be deemed a recovery hereunder.

## XVI. ACTION AGAINST THE COMPANY

No action may be taken against the **Company** unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this Policy. No person or entity shall have any right under this Policy to join the **Company** as a party to any action against any **Insured** to determine such **Insured's** liability nor shall the **Company** be impleaded by such **Insured** or legal representatives of such **Insured**.

## XVII. PARENT CORPORATION RIGHTS AND OBLIGATIONS

By acceptance of this Policy, the **Parent Corporation** is considered the sole agent of and will act on behalf of each **Insured** with respect to:  the payment of premiums and the receiving of any return premiums that may become due under this Policy; the negotiation, agreement to and acceptance of endorsements; the giving or receiving of any notice, including Notice of Claim or Proof of Loss (except the giving of notice to apply for the Extended Reporting Period); the adjustment of the amount of **Loss** submitted; the giving of written notice of termination and the receipt or enforcement of payment of a **Loss**; and the **Parent Corporation** shall be responsible for application of any such payment, as provided for in this Policy, and each **Insured** agrees that the **Parent Corporation** shall act on their behalf.

## XVIII. ALTERATION AND ASSIGNMENT

No change in, modification of, or assignment of interest under this Policy shall be effective except when made by written endorsement to this Policy which is signed by an authorized employee of Chubb & Son, a division of Federal Insurance Company.

## XIX.  TERMINATION OF POLICY

(A)  This Policy shall terminate at the earliest of the following times:

(1)  upon receipt by the **Company** of written notice of termination from the **Parent Corporation**; provided that this Policy may not be terminated by the **Parent Corporation** after the effective date of any event described in Section XI Changes in Exposure (C) of these General Terms and Conditions;

(2)  upon expiration of the **Policy Period** as set forth in Item 2(B) of the Declarations of these General Terms and Conditions;

(3)  twenty (20) days after receipt by the **Parent Corporation** of a written notice of termination from the **Company** based upon non-payment of premium, unless the premium is paid within such twenty (20) day period; or

(4)  at such other time as may be agreed upon by the **Company** and the **Parent Corporation**.

(B)  The **Company** shall refund the unearned premium computed at customary short rates if this Policy is terminated by the **Parent Corporation**.  Under any other circumstances the refund shall be computed pro rata.  Payment or tender of any unearned premium by the **Company** shall not be a condition precedent to the effectiveness of such termination, but such payment shall be made as soon as practicable.

## XX.  TERMINATION OF PRIOR BONDS OR POLICIES

Any prior bonds or policies issued by the **Company** or its affiliates and specified in Item 6 of the Declarations of these General Terms and Conditions shall terminate, if not already terminated, as of the inception of this Policy.

## XXI.  BANKRUPTCY

Bankruptcy or insolvency of any **Insured** shall not relieve the **Company** of its obligations nor deprive the **Company** of its rights or defenses under this Policy.

## XXII.  HEADINGS

The descriptions in the headings and sub-headings of this Policy are solely for convenience, and form no part of the terms and conditions of coverage.

# Schedule of Forms

To be attached to and form part of      Company:   Federal Insurance Company
Policy No.   8181-1088

Issued to:   LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.


PA Forefront Portfolio General Terms & Conditions Coverage Section

14-02-4197 (4/01 ed.)

14-02-9228 (4/04 ed.)

ForeFront Portfolio Directors and Officer Liability Coverage Section (Federal)

14-02-4199 (4/01 ed.)

14-02-6192 (9/01 ed.)

14-02-6282 (1/03 ed.)

14-02-6282 (1/03 ed.)

14-02-9052 (11/03 ed.)

ForeFront Employment Practices Liability Coverage Section (Federal)

14-02-3206 (5/05 ed.)

14-02-4198 (4/01 ed.)

14-02-6224 (10/01 ed.)

ForeFront Fiduciary Liability Coverage Section (Federal)

14-02-4200 (4/01 ed.)

14-02-5935 (10/03 ed.)

ForeFront Portfolio Internet Liability Coverage Section (Federal)

14-02-4201 (4/01 ed.)

ForeFront Portfolio Crime Coverage Section (Federal)

14-02-6648 (5/02 ed.)

Coverage Section:  PA Forefront Portfolio General Terms & Conditions Coverage Section

Effective date of
this endorsement:  July 12, 2005

Company:  Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8181-1088

Issued to:  LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.

---

## PENNSYLVANIA AMENDATORY ENDORSEMENT
## TO GENERAL TERMS & CONDITIONS SECTION

In consideration of the premium charged, it is agreed that:

1.   An Insured Organization or Insured Person may purchase the Extended Reporting Period set forth in, and in accordance with, Section IV. Extended Reporting Period of the General Terms & Conditions Section if any Liability Coverage Section is cancelled or not renewed for any reason by paying the additional premium set forth in Item 5 (B) of the Declarations to the General Terms & Conditions Section within sixty (60) days after such cancellation or non-renewal.

2.   Where premium is due for coverage under the Policy, any payment received by the Company as payment for the Extended Reporting Period shall first be applied to such premium owing for the Policy. An Extended Reporting Period will not take effect until the premium due for the Policy is paid in full and the premium for the Extended Reporting Period coverage is paid promptly when due.

3.   The Company has no obligation to renew the Policy.  If the Company does not renew the Policy it will deliver or mail by first class or registered mail at least sixty (60) days advance written notice of  non-renewal.  Section XIX. Termination of Policy of the General Terms & Conditions Section, paragraph (A)(2), is amended to the extent necessary to effectuate the foregoing.

4.   Any notice of cancellation of the Policy by the Company will be delivered or mailed by first class or registered mail to the Parent Corporation at its last address known to the Company and will include the effective date of cancellation.

5.   The Company may condition renewal of the Policy upon an increase in premium by mailing or delivering to the Parent Corporation, at least thirty (30) days before the effective date of any premium increase, an estimate of the amount of such increase.

6.   Proof of mailing will be sufficient proof of notice for all notices referenced in this Amendatory Endorsement.

7.    All notices of cancellation or non-renewal by the Company under the Policy shall contain the specific reason(s) for same.

8.      If the Parent Corporation cancels the Policy under Section XIX. Termination of Policy of the General Terms & Conditions Section, paragraph (A)(1), the Company will return any unearned premium under paragraph (B) thereof within thirty (30) days after the effective date of cancellation.

9.      If the Policy is cancelled or non-renewed by the Company, the Parent Corporation will have the right to request information regarding losses and Claims under the Policy by submitting a written request to the Company within ten (10) days after receipt of the notice of cancellation or non-renewal from the Company. The Company will provide the requested information within thirty (30) days after receipt of the Parent Corporation's written request.

The Policy will be deemed to have been amended to the extent necessary to effectuate the purposes of this endorsement.

The regulatory requirements of this Amendatory Endorsement shall supersede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the state of Pennsylvania.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

_____
Authorized Representative

Effective date of
this endorsement:   July 12, 2005

**Federal Insurance Company**

Endorsement No.:   2

To be attached to and form a part of Policy
Number:                8181-1088

Issued to:   LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.

---

## COMPLIANCE WITH APPLICABLE TRADE SANCTION LAWS

It is agreed that this insurance does not apply to the extent that trade or economic sanctions or other laws
or regulations prohibit the coverage provided by this insurance.

ALL OTHER TERMS AND CONDITIONS OF THIS POLICY REMAIN UNCHANGED.

Date:  July 15, 2005                                              By _____
                                                                                    Authorized Representative

Coverage Section:  PA Forefront Portfolio General Terms & Conditions Coverage Section

Effective date of
this endorsement: July 12, 2006

Company:  Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 8181-1088

Issued to:  LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.

---

AMEND POLICY PERIOD ENDORSEMENT

In consideration of an additional premium of $ 8,609 charged, it is agreed that:

(1)     Item 2 of the Declarations of the General Terms and Conditions Section is amended to read in its entirety as
follows:

Item 2.   **Policy Period:**

(A)     From 12:01 A.M. on July 12, 2005
(B)     To 12:01 A.M. on September 12, 2006
Local time at the address shown in Item 1.

(2)     It is expressly understood and agreed that the respective Limits of Liability set forth in the Declarations for
each applicable **Liability Coverage Section**, and the Combined Maximum Aggregate Limit of Liability for all
**Claims** under all **Liability Coverage Sections** set forth in Item 3 of the Declarations of the General Terms
and Conditions Section, if applicable, shall continue to be the maximum Limits of Liability for the entire **Policy
Period**, as amended in paragraph (1) above.

(3)     The term "application," as used in this Policy, shall be deemed to include any additional
application and any updated or supplemental information relating to the application for this Policy
attached to and forming part of this Policy, including any materials submitted therewith, all of
which are on file with the Company and are a part of the Policy, as if physically attached.

(4)     The term **Anniversary Date**, as defined in Section II General Definitions (A) of the General
Terms and Conditions Section, is deleted in its entirety.

(5)     The term **Policy Year**, as defined in Section II General Definitions (O) of the General Terms and Conditions
Section, is amended to read in its entirety as follows:

(O)     **Policy Year** means **Policy Period**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_____
Authorized Representative

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

*ForeFront Portfolio*[SM]
*Directors & Officers Liability*
*Coverage Section*

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
a stock insurance company, incorporated under the
laws of Indiana, herein called the **Company.**

**THIS COVERAGE SECTION PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT. READ THE ENTIRE POLICY CAREFULLY.**

**Item 1.** **Parent Corporation:**

LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.
11 LLOYD AVENUE
LATROBE, PA 15650

**Item 2.** **Maximum Aggregate Limit of Liability for this Coverage Section:**

$ 7,500,000.00

**Item 3.** **Coverage is only available for the following if indicated by X:**

[X] (A) Optional Insuring Clause (C):  Corporate Liability Coverage

[ ] (B) Optional Coverage IV:  Additional Limit of Liability Dedicated For Executives

**Item 4.** **Deductible Amounts:**

| | |
|---|---|
| (A) Individual Non-Indemnified Liability Coverage: Insuring Clause (A) | None |
| (B) Individual Indemnified Liability Coverage: Insuring Clause (B) | $75,000.00 |
| (C) Corporate Liability Coverage (Optional): Insuring Clause (C) | $75,000.00 |

**Item 5.** **Pending or Prior Litigation Dates:**

| | | |
|---|---|---|
| (A) | Insuring Clauses (A) and (B): | 7/12/2001 |
| (B) | Insuring Clause (C): | 7/12/2001 |

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Section, the Company and the Insureds agree as follows:

## I.    INSURING CLAUSES

(A)    **Individual Non-Indemnified Liability Coverage**

The **Company** shall pay **Loss** on behalf of the **Insured Persons** resulting from any **D&O Claim** first made against such **Insured Persons** during the **Policy Period**, or any applicable Extended Reporting Period, for **Wrongful Acts**, but only to the extent the **Insured Organization** does not indemnify the **Insured Persons** for such **Loss**.

(B)    **Individual Indemnified Liability Coverage**

The **Company** shall pay **Loss** on behalf of the **Insured Organization** resulting from any **D&O Claim** first made against **Insured Persons** during the **Policy Period**, or any applicable Extended Reporting Period, for **Wrongful Acts** to the extent the **Insured Organization** indemnifies the **Insured Persons** for such **Loss**.

(C)    **Corporate Liability Coverage (Optional)**

If the Corporate Liability Coverage is purchased as set forth in Item 3 of the Declarations of this Coverage Section, the **Company** shall pay **Loss** on behalf of the **Insured Organization** resulting from any **Insured Organization Claim** first made against such **Insured Organization** during the **Policy Period**, or any applicable Extended Reporting Period, for **Wrongful Acts**.

(D)    **Securityholder Derivative Demand Coverage**

The **Company** shall pay **Investigative Costs** on behalf of the **Insured Organization** resulting from any **Securityholder Derivative Demand** first made during the **Policy Period**, or any applicable Extended Reporting Period, for **Wrongful Acts** in an amount not to exceed $100,000, which amount is part of and not in addition to the applicable Limit of Liability as set forth in Item 2 of the Declarations of this Coverage Section and no Deductible Amount shall apply to such amount.

## II.    DEFINITIONS

For purposes of this Coverage Section:

(A)    **Claim** means for purposes of coverage under:

(1)    Insuring Clauses (A) and (B): any **D&O Claim**;

(2)    Insuring Clause (C): any **Insured Organization Claim**; and

(3)    Insuring Clause (D): any **Securityholder Derivative Demand**.

(B)    **Debtor in Possession** means a debtor in possession as such term is used in Chapter 11 of the United States of America Bankruptcy Code.

(C)   **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the **Insured Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

(D)   **D&O Claim** means:

   (1)   any of the following:

      (a)   a written demand for monetary damages or non-monetary relief;

      (b)   a civil proceeding commenced by the service of a complaint or similar pleading;

      (c)   a criminal proceeding commenced by a return of an indictment; or

      (d)   a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

      against an **Insured Person** for a **Wrongful Act**, including any appeal therefrom; or

   (2)   a formal civil, criminal, administrative or regulatory investigation commenced by the service upon or other receipt by the **Insured Person** of a written notice from the investigating authority specifically identifying the **Insured Person** as a target individual against whom formal charges may be commenced; or

   (3)   a written request received by an **Insured** to toll or waive a statute of limitations, relating to a potential **D&O Claim** as described in paragraphs (1) and (2) above.

(E)   **Employee** means any natural person whose labor or service is engaged by and directed by the **Insured Organization**, including part-time, seasonal, leased and temporary employees as well as volunteers.  **Employee** shall not include any independent contractor.

(F)   **Executive** means any natural person specified below:

   (1)   duly elected or appointed directors, officers, members of the Board of Managers or management committee members of any **Insured Organization** incorporated in the United States of America;

   (2)   in–house general counsel of any **Insured Organization** incorporated in the United States of America; or

   (3)   equivalent positions of (1) or (2) above in any **Insured Organization** chartered in any other jurisdiction anywhere in the world.

(G)   **Financial Impairment** means the status of an **Insured Organization** resulting from:

   (1)   the appointment by any state or federal official, agency or court of any receiver, conservator, liquidator, trustee, rehabilitator or similar official to take control of, supervise, manage or liquidate such **Insured Organization**; or

   (2)   such **Insured Organization** becoming a **Debtor in Possession**.

(H)   **Insured** means the **Insured Organization** and any **Insured Person**.

(I)   **Insured Organization Claim** means:

    (1)   any of the following:

        (a)   a written demand for monetary damages or non-monetary relief;

        (b)   a civil proceeding commenced by the service of a complaint or a similar pleading; or

        (c)   a criminal proceeding commenced by a return of an indictment;

        against an **Insured Organization** for a **Wrongful Act**, including any appeal therefrom; or

    (2)   a written request received by an **Insured Organization** to toll or waive a statute of limitations, relating to a potential **Insured Organization Claim** as described in paragraph (1) above.

(J)   **Insured Person** means any past, present or future **Executive** or **Employee** of the **Insured Organization**.

(K)   **Investigative Costs** means reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the **Executives** or **Employees**) incurred by the **Insured Organization**, including its board of directors, Board of Managers, or any committee thereof, in connection with the **Insured Organization's** investigation or evaluation of any **Securityholder Derivative Demand**.

(L)   **Loss** means the total amount which any **Insured** becomes legally obligated to pay as a result of any **Claim** made against any **Insured** for **Wrongful Acts**, including, but not limited to, damages (including punitive or exemplary damages, to the extent such damages are insurable under the law of any jurisdiction which has a substantial relationship to the **Insureds**, the **Company**, this Policy or the **Claim** and which is most favorable to the insurability of such damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**. **Loss** does not include:

    (1)   any amount for which an **Insured Organization** or an **Insured Person** is absolved from payment by reason of any covenant, agreement (other than indemnification of an **Insured Person** by the **Insured Organization**) or court order;

    (2)   matters uninsurable under the law pursuant to which this Policy is construed;

    (3)   taxes, fines or penalties imposed by law, or the multiple portion of any multiplied damage award;

    (4)   any amount incurred by the **Insured Organization** (including its board of directors, Board of Managers, or any committee thereof) in connection with the investigation or evaluation of any **Claim** or potential **Claim** by or on behalf of the **Insured Organization**, except, solely with respect to the Securityholder Derivative Demand Coverage, **Investigative Costs**; or

    (5)   any amount allocated to uncovered loss pursuant to Section X Allocation of the General Terms and Conditions.

(M)     **Outside Capacity** means service by an **Insured Person** as a director, officer, trustee, regent, governor or any equivalent executive position in an **Outside Entity**, but solely during the time that such service is with the knowledge and consent or at the request of the **Insured Organization**.

(N)     **Outside Capacity Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by an **Insured Person** in his or her **Outside Capacity**.

(O)     **Outside Entity** means:

      (1)     any non-profit corporation, community chest, fund or foundation that is not included in the definition of **Insured Organization** and that is exempt from federal income tax as an organization described in Section 501(C)(3) of the Internal Revenue Code of 1986, as amended;

      (2)     any other entity organized for a religious or charitable purpose under any non-profit organization act or statute; and

      (3)     any other non-profit or any for-profit entity if such entity is specifically added as an **Outside Entity** by written endorsement attached to this Policy.

(P)     **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

(Q)     **Pollution** means the actual, alleged or threatened discharge, release, escape or disposal of **Pollutants** into or on real or personal property, water or the atmosphere or any direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so.

(R)     **Securities Laws** means the Securities Act of 1933, Securities Exchange Act of 1934, Investment Act of 1940, any state "blue sky" securities law, or any other federal, state or local securities law or any amendments thereto or any rules or regulations promulgated thereunder or any other provision of statutory or common law used to impose liability in connection with the offer to sell or purchase, or the sale or purchase of securities.

(S)     **Securityholder Derivative Action** means any **Claim** brought on behalf of, or in the name or the right of, the **Insured Organization** by one or more securityholders of the **Insured Organization** in their capacity as such if such **Claim** is brought and maintained without the assistance, participation or solicitation of any **Executive**.

(T)     **Securityholder Derivative Demand** means any written demand, by one or more securityholders of an **Insured Organization** without the assistance, participation or solicitation of any **Executive**, upon the board of directors or Board of Managers of such **Insured Organization**, to bring a civil proceeding in a court of law against any **Executive** for a **Wrongful Act** by an **Executive**.

(U)     **Wrongful Act** means:

      (1)     any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by:

(a)    For purposes of coverage under Insuring Clauses (A) and (B): any **Insured Person** in his or her capacity as such, or any matter claimed against any **Insured Person** solely by reason of his or her status as such;

(b)    For purposes of coverage under Insuring Clause (C): any **Insured Organization**; or

(c)    For purposes of coverage under Insuring Clause (D): any **Executive**; or

(2)    any **Outside Capacity Wrongful Act**.

---

## III.    EXCLUSIONS

(A)    No coverage will be available under this Coverage Section for any **Claim** against an **Insured**:

(1)    based upon, arising from, or in consequence of any circumstance, if written notice of such circumstance has been given under any policy of which this Coverage Section is a direct or indirect renewal or replacement and if such prior policy affords coverage (or would afford such coverage except for the exhaustion of its limits of liability) for such **Claim**, in whole or in part, as a result of such notice;

(2)    based upon, arising from, or in consequence of a written demand, suit, or other proceeding pending, or order, decree or judgment entered for or against any **Insured** on or prior to the applicable Pending or Prior Litigation Date as set forth in Item 5 of the Declarations of this Coverage Section, or the same or any substantially similar fact, circumstance or situation underlying or alleged therein;

(3)    based upon, arising from, or in consequence of **Pollution**, including but not limited to any securities **Claim**, **Securityholder Derivative Demand** or **Securityholder Derivative Action** for financial loss to any **Insured Organization**, its securityholders or its creditors in connection with **Pollution**; provided that this Exclusion (A)(3) shall not apply to any **Securityholder Derivative Demand** or **Securityholder Derivative Action** under Insuring Clause (A) for which the **Insured Organization** does not indemnify the **Insured Person** either because the **Insured Organization** is not permitted by common or statutory law to grant such indemnification or because of the **Financial Impairment** of the **Insured Organization**;

(4)    for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion (A)(4) shall not apply to mental anguish, humiliation or emotional distress asserted in an employment-related **D&O Claim**;

(5)    brought or maintained by or on behalf of any **Insured** in any capacity; provided that this Exclusion (A)(5) shall not apply to:

(a)    a **Securityholder Derivative Demand** or **Securityholder Derivative Action**;

(b)    a **Claim** brought or maintained by an **Insured Person** for contribution or indemnification, if such **Claim** directly results from another **Claim** covered under this Coverage Section;

(c)    a **D&O Claim** brought or maintained by **Employees** who are not past or present **Executives** of an **Insured Organization** if such **D&O Claim** is brought and maintained without the assistance, participation or solicitation of any such **Executives**;

(d)    a **D&O Claim** brought or maintained by an **Executive** for the actual or alleged wrongful termination of such **Executive**;

(e)    a **Claim** brought or maintained by an **Executive** who has not served as an **Executive** of the **Insured Organization** for at least four (4) years prior to the date such **Claim** is first made and who brings and maintains such **Claim** without the assistance, participation or solicitation of the **Insured Organization** or any **Insured Person** who: (i) is serving as an **Executive** of the **Insured Organization**; or (ii) has served as an **Executive** of the **Insured Organization** within such four (4) year period; or

(f)    a **Claim** brought and maintained in a jurisdiction outside the United States of America, Canada or Australia by an **Insured Person** of an **Insured Organization** chartered in such foreign jurisdiction;

(6)    brought or maintained by or on behalf of any **Outside Entity**, or one or more directors or officers of any **Outside Entity**; provided that this Exclusion (A)(6) shall not apply to:

(a)    a **Claim** that is a derivative action brought or maintained on behalf of an **Outside Entity** by one or more persons who are not: **Insured Persons**; or directors, officers, trustees, regents, governors or any equivalent executive position of the **Outside Entity**; and who bring and maintain such **Claim** without the solicitation, assistance or participation of any such person; or

(b)    a **Claim** brought or maintained by: an **Insured Person**; or directors, officers, trustees, regents, governors or any equivalent executive position of an **Outside Entity**; for contribution or indemnification, if such **Claim** directly results from another **Claim** covered under this Coverage Section;

(7)    for **Wrongful Acts** of an **Insured Person** in his or her capacity as a director, officer, trustee, regent, governor or employee of an entity other than an **Insured Organization**, even if such service is with the knowledge or consent or at the request of the **Insured Organization**, provided this exclusion shall not apply to service in an **Outside Capacity**;

(8)    for an actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(9)    based upon, arising from, or in consequence of the actual or alleged violation of any **Securities Laws**; provided that this Exclusion (A)(9) shall not apply to any **Claim**:

(a)    based upon or arising out of the offering, sale or purchase of securities, whether debt or equity, in a transaction or a series of transactions that are in fact in law exempt from registration under the Securities Act of 1933 and any amendments thereto or any rules or regulations promulgated thereunder; or

      (b)    made by any securityholder of the **Insured Organization** for the failure of the **Insured Organization** to undertake or complete the initial public offering or sale of securities of the **Insured Organization**;

    (10)    based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured**, if a final and non-appealable judgment or adjudication adverse to such **Insured** establishes such a deliberately fraudulent act or omission or willful violation; or

    (11)    based upon, arising from, or in consequence of such **Insured** having gained in fact any profit, remuneration or financial advantage to which such **Insured** was not legally entitled.

(B)    No coverage will be available under this Coverage Section for **Loss**, other than **Defense Costs**, which constitutes costs of compliance with any order for, grant of or agreement to provide non-monetary relief.

(C)    No coverage will be available under Insuring Clause (C) for any **Insured Organization Claim**:

    (1)    based upon, arising from, or in consequence of the actual or proposed payment by the **Insured Organization** of allegedly inadequate consideration in connection with an **Insured Organization's** purchase of securities issued by any **Insured Organization**; provided that this Exclusion (C)(1) shall not apply to **Defense Costs**;

    (2)    based upon, arising from, or in consequence of any actual or alleged liability of an **Insured Organization** under any written or oral contract or agreement, provided that this Exclusion (C)(2) shall not apply to the extent that an **Insured Organization** would have been liable in the absence of the contract or agreement;

    (3)    based upon, arising from, or in consequence of any employment-related **Wrongful Act**;

    (4)    based upon, arising from, or in consequence of any actual or alleged discrimination or sexual harassment of any third party;

    (5)    based upon, arising from, or in consequence of libel, slander, oral or written publication of defamatory or disparaging material, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, assault, battery or loss of consortium;

    (6)    based upon, arising from, or in consequence of any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under this Coverage Section; provided that this Exclusion (C)(6) shall not apply to any securities **Claim**, **Securityholder Derivative Demand** or **Securityholder Derivative Action**;

    (7)    based upon, arising from, or in consequence of any actual or alleged infringement of copyright, patent, trademark, trade name, trade dress, service mark or misappropriation of ideas or trade secrets; or

    (8)    based upon, arising from, or in consequence of allegations of price fixing, restraint of trade, monopolization, unfair trade practices or any actual or alleged violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any other federal statutory provision involving anti-trust, monopoly, price fixing, price

discrimination, predatory pricing or restraint of trade activities, and any amendments thereto or any rules or regulations promulgated thereunder or in connection with such statutes; or any similar provision of any federal, state, or local statutory law or common law anywhere in the world.

(D)    **Severability of Exclusions**

With respect to the Exclusions (A)(10) and (A)(11) in this Coverage Section:

(1)    no fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** to determine if coverage is available; and

(2)    only facts pertaining to and knowledge possessed by any past, present or future Chief Financial Officer, President, Chief Executive Officer or Chairperson of any **Insured Organization** shall be imputed to any **Insured Organization** to determine if coverage is available.

---

**IV.    ADDITIONAL LIMIT OF LIABILITY DEDICATED FOR EXECUTIVES (Optional)**

(A)    Notwithstanding anything in this Policy to the contrary, the Additional Limit of Liability Dedicated For Executives, if purchased as set forth in Item 3 of the Declarations of this Coverage Section, will be an additional Limit of Liability in an amount not to exceed $500,000, which amount is in addition to and not part of the Limit of Liability as set forth in Item 2 of the Declarations of this Coverage Section.

(B)    This Additional Limit of Liability Dedicated For Executives is available solely for **Loss** resulting from any **D&O Claim** against any **Executive** covered under Insuring Clause (A) of this Coverage Section.

(C)    The Additional Limit of Liability Dedicated For Executives shall be excess of any insurance available that is specifically excess to this Policy and such excess insurance must be completely exhausted by payment of loss, damages or defense costs thereunder before the **Company** shall have any obligation to make any payment on account of the Additional Limit of Liability Dedicated For Executives.

---

**V.    PAYMENT OF LOSS**

(A)    In the event of **Loss** arising from one or more **Claims** for which payment is otherwise due under this Coverage Section but which **Loss** in the aggregate exceeds the remaining available Limit of Liability for this Coverage Section, the **Company** shall:

(1)    first pay such **Loss** for which coverage is provided under Insuring Clause (A) of this Coverage Section; then

(2)    with respect to whatever remaining amount of the Limit of Liability is available after payment of (1) above, pay such **Loss** for which coverage is provided under any other Insuring Clause of this Coverage Section.

(B)    Subject to the provisions of paragraph (A)(2) above, the **Company** shall, at the written request of the **Parent Corporation**, delay payment of **Loss** for which coverage is provided under any

Insuring Clause other than Insuring Clause (A) until such time as the **Parent Corporation** designates; provided that the **Company's** liability with respect to such delayed payment shall not be increased, and shall not include any interest as a result of such delay. The **Parent Corporation** shall provide written notice to the **Company** when such delayed payment shall be made. Such written notice shall be deemed consent from all **Insureds**, including all **Insured Persons**, to release such payment and the **Company** shall have no further obligation under this Policy with respect to such funds.

---

**VI.    SECURITIES TRANSACTIONS**

If, during the **Policy Period**, the **Insured Organization** intends to sell or offer to sell securities of any kind or nature whatsoever, issued at any time by the **Insured Organization** in a transaction that is not exempt from registration under the Securities Act of 1933, as amended (a "Transaction"), the **Insured Organization** will, no later than thirty (30) days prior to the effective date of the registration statement for such sale or offering, give the **Company** written notice of the proposed sale or offering and all information requested by the **Company** relating thereto. The **Company** shall provide to the **Insured Organization** a quotation for coverage with respect to such sale or offering; provided any such coverage shall be subject to such terms, conditions, limitations of coverage and such additional premium as the **Company**, in its sole discretion, may require. Unless and until the **Company** determines to issue coverage there shall in fact be no coverage for such Transaction.

---

**VII.    OTHER INSURANCE**

(A)    If any **Loss** under this Coverage Section is insured under any other valid and collectible insurance policy(ies), prior or current, then this Coverage Section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this Coverage Section.

(B)    Any coverage for **Claims** for **Outside Capacity Wrongful Acts** will be specifically excess of any insurance provided by or indemnification available from the **Outside Entity** or any other source, other than the **Insured Organization**, for the benefit of the **Insured Person** serving in such **Outside Capacity**. Payment by the **Company** or any affiliate of the **Company** under another policy as a result of a **Claim** against an **Insured Person** in an **Outside Capacity** shall reduce, by the amount of such payment, the **Company's** Limit of Liability under this Coverage Section with respect to such **Claim**.

---

**VIII.    COORDINATION OF COVERAGE**

Any **Loss** covered under both this Coverage Section and the Employment Practices Liability Coverage Section, if purchased, shall be first covered under the Employment Practices Liability Coverage Section, subject to the terms, conditions and limitations therein. Any remaining portion of such **Loss** otherwise covered under this Coverage Section which is not paid under the Employment Practices Liability Coverage Section shall be covered under this Coverage Section, subject to its terms, conditions and limitations.

---

Coverage Section: ForeFront Portfolio Directors and Officer Liability Coverage Section (Federal)

Effective date of
this endorsement: July 12, 2005          Company: Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8181-1088

Issued to: LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.

---

## PENNSYLVANIA AMENDATORY ENDORSEMENT
## TO DIRECTORS & OFFICERS LIABILITY COVERAGE SECTION

In consideration of the premium charged, it is agreed that:

1.      The Company will pay post- and pre-judgment interest to the extent that such interest is assessed against that portion of Loss paid by the Company under the Policy, even if the payment of such interest exceeds the applicable Limit of Liability.  Section II. Definitions (L) of this Coverage Section is amended accordingly.

The Policy will be deemed to have been amended to the extent necessary to effectuate the purposes of this endorsement.

The regulatory requirements of this Amendatory Endorsement shall supersede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the state of Pennsylvania.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

Coverage Section:  ForeFront Portfolio Directors and Officer Liability Coverage Section (Federal)

Effective date of
this endorsement: July 12, 2005          Company: Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 8181-1088
Issued to: LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.

---

## AMEND SECTION III EXCLUSION (A)(4) ENDORSEMENT

In consideration of the premium charged, it is agreed that Section III Exclusions (A)(4) of the Coverage Section identified above is amended to read in its entirety as follows:

(4)     based upon, arising from, or in consequence of any actual or alleged bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion (A)(4) shall not apply to mental anguish, humiliation or emotional distress asserted in an employment-related **D&O Claim**;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

_____
Authorized Representative

Coverage Section:  ForeFront Portfolio Directors and Officer Liability Coverage Section (Federal)

Effective date of
this endorsement: July 12, 2005                     Company:  Federal Insurance Company

                                                    Endorsement No. 3

                                                    To be attached to and
                                                    form a part of Policy No. 8181-1088

Issued to:  LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.

---

PENDING OR PRIOR LITIGATION EXCLUSION FOR INCREASED LIMITS

In consideration of the premium charged, it is agreed that the Company's maximum limit of liability under Insuring Clauses (A) and (B), and (C) if purchased, of the Coverage Section identified above for **Loss** from any **Claim** based upon, arising from, or in consequence of a written demand, suit, or other proceeding pending, or order, decree or judgment entered for or against any **Insured**:

(a)        on or prior to January 2, 2003; but

(b)        after the applicable Pending or Prior Litigation Date as set forth in Item 5 of the Declarations of the Coverage
           Section identified above,

or the same or any substantially similar fact, circumstance or situation underlying or alleged therein, shall be $2,000,000. which amount is included within, and not in addition to, the Company's Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations of the Coverage Section identified above.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.


_____
Authorized Representative

Coverage Section:  ForeFront Portfolio Directors and Officer Liability Coverage Section (Federal)

Effective date of
this endorsement: July 12, 2005

Company:  Federal Insurance Company

Endorsement No. 4

To be attached to and
form a part of Policy No. 8181-1088

Issued to:  LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.

---

PENDING OR PRIOR LITIGATION EXCLUSION FOR INCREASED LIMITS

In consideration of the premium charged, it is agreed that the Company's maximum limit of liability under Insuring Clauses (A) and (B), and (C) if purchased, of the Coverage Section identified above for **Loss** from any **Claim** based upon, arising from, or in consequence of a written demand, suit, or other proceeding pending, or order, decree or judgment entered for or against any **Insured**:

(a)      on or prior to July 12, 2005; but

(b)      after the applicable Pending or Prior Litigation Date as set forth in Item 5 of the Declarations of the Coverage Section identified above,

or the same or any substantially similar fact, circumstance or situation underlying or alleged therein, shall be $ 5,000,000 which amount is included within, and not in addition to, the Company's Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations of the Coverage Section identified above.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

_____
Authorized Representative

14-02-6282 (1/2003) rev.              Page 1

Coverage Section: ForeFront Portfolio Directors and Officer Liability Coverage Section (Federal)

Effective date of
this endorsement: July 12, 2005          Company: Federal Insurance Company

                                        Endorsement No. 5

                                        To be attached to and
                                        form a part of Policy No. 8181-1088

Issued to: LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.

---

FAMILY CLAIMS SUBLIMIT ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The Company's maximum limit of liability under the Coverage Section identified above for all **Loss** from all **Claims**, including but not limited to any shareholder derivative action or representative class action, brought or maintained by or on behalf of, or in the name or right of, any or all members of **The Podlucky Family** shall be $2,000,000., which amount shall be part of, and not in addition to, the Company's Maximum Aggregate Limit of Liability set forth in Item 2 of the Declarations of the Coverage Section identified above.

(2)     For the purposes of this endorsement, the term **The Podlucky Family** means the estates, heirs, legal representatives, assigns, relatives (whether related by consanguinity or affinity) of Podlucky or the trustees or beneficiaries of any trust created or maintained by or for the benefit of such individuals or entities.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

---
Authorized Representative

DECLARATIONS

**FEDERAL INSURANCE COMPANY**
a stock insurance company, incorporated under the
laws of Indiana, herein called the **Company.**

**THIS COVERAGE SECTION PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT. READ THE ENTIRE POLICY CAREFULLY.**

**Item 1. Parent Corporation:**

LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.
11 LLOYD AVENUE
LATROBE, PA 15650

**Item 2. Maximum Aggregate Limit of Liability for this Coverage Section:**

$ 2,000,000.00

**Item 3. Coverage is only available for the following if indicated by X:**   Limit of Liability

☐ Optional Third Party Liability Coverage Insuring Clause (B):   Not Covered

**Item 4. Deductible Amounts:**

(A) Employment Practices Liability Coverage: Insuring Clause (A):   $50,000.00
(B) Third Party Liability Coverage (Optional): Insuring Clause (B):   Not Covered

**Item 5. Pending or Prior Litigation Dates:**

(A)   Insuring Clauses (A):   7/12/2001
(B)   Insuring Clause (B):   Not Applicable

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Section, the Company and the Insureds agree as follows:

## I.  INSURING CLAUSES

(A)  **Employment Practices Liability Coverage**

The **Company** shall pay **Loss** on behalf of the **Insureds** resulting from any **Employment Claim** first made against such **Insureds** during the **Policy Period**, or any applicable the Extended Reporting Period, for **Wrongful Acts**.

(B)  **Third Party Liability Coverage (Optional)**

If Third Party Liability Coverage is purchased as set forth in Item 3 of the Declarations of this Coverage Section, the **Company** shall pay **Loss** on behalf of the **Insureds** resulting from any **Third Party Claim** first made against such **Insureds** during the **Policy Period**, or any applicable Extended Reporting Period, for **Wrongful Acts** in the amount set forth in Item 3 of the Declarations of this Coverage Section.  Such amount shall be part of and not in addition to the Limit of Liability as set forth in Item 2 of the Declarations of this Coverage Section.

## II.  DEFINITIONS

For purposes of this Coverage Section:

(A)  **Benefits** means perquisites, fringe benefits, deferred compensation or payments (including insurance premiums) in connection with an employee benefit plan and any other payment. **Benefits** shall not include salary or wages, **Stock Benefits** or non-deferred cash incentive compensation.

(B)  **Breach of Employment Contract** means any breach of any oral, written or implied contract or contractual obligation including but not limited to any such obligation arising out of any personnel manual, employee handbook, policy statement or other representation.

(C)  **Claim** means any **Employment Claim** and any **Third Party Claim**.

(D)  **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the **Insured Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

(E)  **Discrimination** means any violation of employment discrimination laws including any actual, alleged or constructive employment termination, dismissal, or discharge, employment demotion, denial of tenure, modification of any term or condition of employment, any failure or refusal to hire or promote, or any limitation, segregation or classification of any **Employee** or applicant for employment in any way that would deprive or tend to deprive any person of employment opportunities or otherwise affect his or her status as an **Employee** based on such person's race, color, religion, creed, age, sex, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, Vietnam Era Veteran status or other protected military status or other status that is protected pursuant to any federal, state, or local statutory law or common law anywhere in the world.

(F)     **Employee** means any natural person whose labor or service is engaged by and directed by the **Insured Organization**, including part-time, seasonal, leased and temporary employees as well as volunteers, but only while that natural person is acting in his or her capacity as such. **Employee** shall not include any **Independent Contractor**.

(G)     **Employment Claim** means:

   (1)     any of the following:

      (a)     a written demand for monetary damages or non-monetary relief, including but not limited to a written demand for reinstatement, reemployment or re-engagement;

      (b)     a civil proceeding commenced by the service of a complaint or similar pleading;

      (c)     an arbitration proceeding; or

      (d)     a formal administrative or regulatory proceeding or tribunal proceeding, commenced by the filing of a notice of charges, formal investigative order or similar document, including, but not limited to, any Equal Employment Opportunity Commission proceeding or any other similar governmental agency located anywhere in the world; provided however that in the context of an audit conducted by the Office of Federal Contract Compliance Programs ("OFCCP"), **Employment Claim** shall be limited to a Notice of Violation or Order to Show Cause or written demand for monetary damages or injunctive relief;

      which is brought and maintained by or on behalf of any past, present or prospective **Employee**, **Executive** or **Independent Contractor** or by the OFCCP, with respect to paragraph (d) above, against any **Insured** for a **Wrongful Act** in connection with any actual or alleged **Breach of Employment Contract**, **Discrimination**, **Harassment**, **Retaliation**, **Workplace Tort** or **Wrongful Employment Decision** (even if such **Wrongful Act** is related to allegations in a criminal proceeding), including any appeal therefrom; or

   (2)     a written request received by an **Insured** to toll or waive a statute of limitations, relating to a potential **Employment Claim** as described in paragraph (1) above.

   **Employment Claim** shall not include any labor or grievance arbitration or other proceeding pursuant to a collective bargaining agreement.

(H)     **Executive** means any natural person specified below:

   (1)     duly elected or appointed as a directors, officers, members of the Board of Managers or management committee members of any **Insured Organization** incorporated in the United States of America;

   (2)     in–house general counsel of any **Insured Organization** incorporated in the United States of America; or

   (3)     equivalent positions of (1) or (2) above in any **Insured Organization** chartered in any other jurisdiction anywhere in the world.

(I)     **Harassment** means:

   (1)     sexual harassment, including unwelcome sexual advances, requests for sexual favors, or other conduct of a sexual nature that is made a condition of employment with, used as a

basis for employment decisions by, interferes with performance or creates an intimidating, hostile or offensive working environment within, the **Insured Organization**; or

(2) workplace harassment, including work related harassment of a non-sexual nature that interferes with performance or creates an intimidating, hostile or offensive working environment within the **Insured Organization**.

(J) **Independent Contractor** means any natural person working for the **Insured Organization** in the capacity of an independent contractor and pursuant to an **Independent Contractor Services Agreement**.

(K) **Independent Contractor Services Agreement** means any express contract or agreement between an **Independent Contractor** and the **Insured Organization** governing the nature of the **Insureds'** engagement of such **Independent Contractor**.

(L) **Insured** means the **Insured Organization** and any **Insured Person**.

(M) **Insured Person** means:

(1) any past, present or future **Executive** or **Employee** of the **Insured Organization**; and

(2) with respect to Insuring Clause (A), any **Independent Contractor**, but only if the **Insured Organization** agrees in writing, prior to or no later than thirty (30) days after the **Employment Claim** or **Third Party Claim** is made, to indemnify the **Independent Contractor** for liability arising out of any **Employment Claim** or **Third Party Claim**.

(N) **Loss** means the total amount which any **Insured** becomes legally obligated to pay as a result of any **Claim** made against any **Insured** for **Wrongful Acts**, including, but not limited to, damages (including punitive or exemplary damages, liquidated damages awarded pursuant to the Age Discrimination in Employment Act or the Equal Pay Act, or the multiple portion of any multiplied damage award, to the extent such damages are insurable under the law of any jurisdiction which has a substantial relationship to the **Insureds**, the **Company**, this Policy or the **Claim** and which is most favorable to the insurability of such damages), judgments, settlements, pre-judgment and post-judgment interest and **Defense Costs**. **Loss** does not include:

(1) any amount for which an **Insured Organization** or an **Insured Person** is absolved from payment by reason of any covenant, agreement (other than indemnification of an **Insured Person** by the **Insured Organization**) or court order;

(2) matters uninsurable under the law pursuant to which this Policy is construed;

(3) taxes, fines or penalties imposed by law;

(4) **Stock Benefits**;

(5) any amount allocated to uncovered loss pursuant to Section X Allocation of the General Terms and Conditions Section;

(6) the future compensation or **Benefits** of a claimant who has been or shall be hired, promoted or reinstated to employment pursuant to a settlement, order or other resolution of such **Claim**; or

(7) any monetary payment for violation of any notice requirement pursuant to or for a notice period under any applicable law, including the Worker Adjustment and Retraining

Notification Act or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world.

(O)     **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof.  Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

(P)     **Pollution** means the actual, alleged or threatened discharge, release, escape or disposal of **Pollutants** into or on real or personal property, water or the atmosphere or any direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so.

(Q)     **Retaliation** means retaliatory treatment against an **Employee**, **Executive** or **Independent Contractor** on account of such individual:

   (1)     exercising his or her rights under law, including but not limited to rights under any workers compensation laws, the Family and Medical Leave Act, or the Americans with Disabilities Act;

   (2)     refusing to violate any law;

   (3)     having assisted or testified in or cooperated with a proceeding or investigation regarding alleged violations of law by the **Insured Organization**;

   (4)     disclosing or threatening to disclose to a superior or to any governmental agency any alleged violations of law; or

   (5)     filing any claim against the **Insured Organization** under the Federal False Claims Act or any other similar "whistle blower" federal, state, or local statutory law or common law anywhere in the world.

(R)     **Stock Benefits** means any offering, plan or agreement between the **Insured Organization** and any **Executive** or **Employee** which grants stock or stock options or stock appreciation rights as to the **Insured Organization** to such individual, including but not limited to stock options, restricted stock or any other stock grant, but not including employee stock ownership plans or employee stock purchase plans.

(S)     **Third Party** means any natural person who is a customer, vendor, service provider or other business invitee of the **Insured Organization**. **Third Party** shall not include **Employees**.

(T)  **Third Party Claim** means:

  (1)  any of the following:

    (a)  a written demand for monetary damages or non-monetary relief;

    (b)  a civil proceeding commenced by the service of a complaint or similar pleading;

    (c)  an arbitration proceeding; or

    (d)  a formal administrative regulatory or tribunal proceeding commenced by the filing of a notice of charges, formal investigative order or similar document;

  which is brought and maintained by or on behalf of a **Third Party** against an **Insured** for a **Wrongful Act** in connection with any actual or alleged **Third Party Discrimination or Sexual Harassment**, including any appeal therefrom; or

  (2)  a written request received by an **Insured** to toll or waive a statute of limitations, relating to a potential **Third Party Claim** as described in paragraph (1) above.

(U)  **Third Party Discrimination or Sexual Harassment** means:

  (1)  discrimination against a **Third Party** based upon such **Third Party's** race, color, religion, creed, age, sex, disability, marital status, national origin, pregnancy, HIV status, sexual orientation or preference, Vietnam Era Veteran status or other protected military status or other status that is protected pursuant to any federal, state, or local statutory law or common law anywhere in the world; or

  (2)  sexual harassment, including unwelcome sexual advances, requests for sexual favors or other conduct of a sexual nature against a **Third Party**.

(V)  **Workplace Tort** means actual or alleged:

  (1)  employment-related misrepresentation, defamation (including libel and slander), invasion of privacy, negligent evaluation, wrongful discipline or wrongful deprivation of career opportunity; or

  (2)  employment-related negligent retention, supervision, hiring or training, employment-related wrongful infliction of emotional distress, mental anguish or humiliation or failure to provide or enforce consistent employment-related corporate policies and procedures; when alleged as part of an **Employment Claim** for actual or alleged **Wrongful Employment Decision**, **Breach of Employment Contract**, **Discrimination**, **Harassment**, or **Retaliation**.

(W)  **Wrongful Act** means any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by any **Insured Organization** or by any **Insured Person** in his or her capacity as such, or any matter claimed against any **Insured Person** solely by reason of his or her status as such.

(X)  **Wrongful Employment Decision** means the actual, alleged or constructive termination, dismissal, or discharge of employment, demotion, denial of tenure, or failure or refusal to hire or promote. **Wrongful Employment Decision** shall not include **Breach of Employment Contract**.

III.     **EXCLUSIONS**

(A)     No coverage will be available under this Coverage Section for any **Claim**:

   (1)     based upon, arising from, or in consequence of any circumstance, if written notice of such circumstance has been given under any policy of which this Coverage Section is a direct or indirect renewal or replacement and if such prior policy affords coverage (or would afford such coverage except for the exhaustion of its limits of liability) for such **Claim**, in whole or in part, as a result of such notice;

   (2)     based upon, arising from, or in consequence of a written demand, suit, formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document, an audit conducted by the Office of Federal Contract Compliance Programs or arbitration proceeding pending or order, decree or judgment entered for or against any **Insured** on or prior to the applicable Pending or Prior Litigation Date as set forth in Item 5 of the Declarations of this Coverage Section or the same or any substantially similar fact, circumstance or situation underlying or alleged therein;

   (3)     based upon, arising from, or in consequence of **Pollution**; provided that this Exclusion (A)(3) shall not apply to any **Employment Claim** for **Retaliation**;

   (4)     for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion (A)(4) shall not apply to any emotional distress, mental anguish or humiliation;

   (5)     based upon, arising from, or in consequence of any actual or alleged obligation of any **Insured** pursuant to any workers compensation, unemployment insurance, social security, disability benefits or any similar federal, state, or local statutory law or common law anywhere in the world; provided that this Exclusion (A)(5) shall not apply to any **Employment Claim** for **Retaliation**;

   (6)     based upon, arising from, or in consequence of the liability of others assumed by any **Insured** under any contract or agreement, either oral or written, except to the extent that an **Insured** would have been liable in the absence of the contract or agreement;

   (7)     for any actual or alleged breach of any **Independent Contractor Services Agreement**;

   (8)     for any actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Securities Act of 1974 (except Section 510 thereof), the Fair Labor Standards Act (except the Equal Pay Act), the Worker Adjustment and Retraining Notification Act, the Consolidated Omnibus Budget Reconciliation Act of 1985, the Occupational Safety and Health Act, or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world; provided that this Exclusion (A)(8) shall not apply to any **Employment Claim** for **Retaliation**; or

(9)     for any actual or alleged violation of the responsibilities, obligations or duties imposed by the National Labor Relations Act or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world.

(B)     No coverage will be available under this Coverage Section for **Loss**, other than **Defense Costs**:

     (1)     which constitutes **Benefits** due or to become due or the equivalent value of such **Benefits**; provided that this Exclusion (B)(1) shall not apply to any **Employment Claim** for actual or alleged wrongful termination, dismissal or discharge of employment;

     (2)     which constitutes costs associated with any accommodation pursuant to the Americans with Disabilities Act or the Civil Rights Act of 1964 or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

     (3)     which constitutes costs of compliance with any order for, grant of or agreement to provide non-monetary relief; or

     (4)     which constitutes severance payments pursuant to an express written obligation in the event of a termination of employment; provided that this Exclusion (B)(4) shall not apply to the extent such payments are negotiated with and consented to by the **Company** as part of a settlement.

(C)     No coverage will be available under this Coverage Section for **Loss**, other than **Defense Costs**, resulting from any **Claim** based upon, arising from, or in consequence of any actual or alleged breach of any written employment contract; provided that this Exclusion (C) shall not apply to the extent an **Insured** would have been liable for such **Loss** in the absence of such written employment contract.

(D)     No coverage will be available under this Coverage Section for any **Third Party Claim** in connection with any actual or alleged price discrimination or violation of any anti-trust statute or other law designed to protect competition or prevent unfair trade practices.

---

## IV.    EMPLOYMENT CLAIM ARBITRATION

(A)     Any dispute between any **Insured** and the **Company** based upon, arising from or in connection with any actual or alleged coverage under this Coverage Section, including but not limited to any dispute sounding in contract or tort, shall be submitted to binding arbitration.

(B)     The **Insured Organization**, however, shall first have the option to resolve the dispute by non-binding mediation pursuant to such rules and procedures, and using such mediator, as the parties may agree. If the parties cannot so agree, the mediation shall be administered by the American Arbitration Association pursuant to its then prevailing commercial mediation rules.

(C)     If the parties cannot resolve the dispute by non-binding mediation, the parties shall submit the dispute to binding arbitration pursuant to the rules of the American Arbitration Association, except that the arbitration panel shall consist of one arbitrator selected by the **Insureds**, one arbitrator selected by the **Company**, and a third arbitrator selected by the first two arbitrators.

---

V.      **OTHER INSURANCE**

Unless specifically stated otherwise, the coverage afforded under this Coverage Section:

(A)     for **Employment Claims**, shall be primary; provided that with respect to that portion of an **Employment Claim** made against any leased or temporary **Employee** or **Independent Contractor**, **Loss**, including **Defense Costs**, payable on behalf of such leased or temporary **Employee** or **Independent Contractor** under this Coverage Section will be specifically excess of and will not contribute with other valid insurance, including but not limited to any other insurance under which there is a duty to defend, unless such other insurance is specifically stated to be in excess over the Limit of Liability of this Coverage Section.

(B)     for **Third Party Claims**, shall be specifically excess of and will not contribute with other valid insurance, including but not limited to any other insurance under which there is a duty to defend, unless such other insurance is specifically stated to be in excess over the Limit of Liability of this Coverage Section.

---

VI.     **COORDINATION OF COVERAGE**

Any **Loss** covered under this Coverage Section and either the Directors and Officers Liability Coverage Section or the Fiduciary Liability Coverage Section, if purchased, shall be first covered under this Coverage Section, subject to its terms, conditions and limitations.

---

Coverage Section: ForeFront Employment Practices Liability Coverage Section (Federal)

Effective date of
this endorsement: July 12, 2005

Company: Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8181-1088

Issued to: LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.

---

### LOSS PREVENTION CONSULTANT SERVICES ENDORSEMENT

In order to assist the **Insured** in reducing its exposure to covered **Loss** under this coverage section, the Company has agreed to contribute to the cost of the qualified employment practices loss prevention consultant services reviewed and approved by the Company, including but not limited to the following:

(a)     Legal compliance audits of human resources/employment policies and practices;

(b)     Development or updating of human resources/employment policies and practices;

(c)     Training program design and implementation on topics such as employment discrimination laws, equal employment opportunity obligations, maintaining hostile-free work environments, interviewing skills, managing diversity, and handling corrective action and discharge issues, all with a focus on loss prevention;

(d)     Legal advice and counsel on employment issues; or

(e)     Statistical analyses on workforce and employment practices to detect trends or patterns that could lead to regulatory problems, lawsuits or employee allegations;

provided, however, that such contribution shall take the form of a return premium of fifty percent (50%) of the cost of such qualified employment practices loss prevention consultant services, but such contribution shall also be subject to a maximum amount equal to ten percent (10%) of the annual premium charged for this coverage section.

All employment practices loss prevention consultant services shall be provided by a loss prevention services provider approved by the Company and such services must be rendered during the **Policy Period**.

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.


_Robert Hamburger_

_____
Authorized Representative

Coverage Section:  ForeFront Employment Practices Liability Coverage Section (Federal)

Effective date of
this endorsement:  July 12, 2005          Company:  Federal Insurance Company

Endorsement No. 2

To be attached to and
form a part of Policy No. 8181-1088

Issued to:  LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.

---

### PENNSYLVANIA AMENDATORY ENDORSEMENT
### TO EMPLOYMENT PRACTICES LIABILTY COVERAGE SECTION

In consideration of the premium charged, it is agreed that:

1.      The Company will pay post- and pre-judgment interest to the extent that such interest is assessed
against that portion of Loss paid by the Company under the Policy, even if the payment of such
interest exceeds the applicable Limit of Liability.  Section II. Definitions (N) of this Coverage
Section is amended accordingly.

2.      The arbitration provisions of Section IV. Employment Claim Arbitration of the Employment
Practices Liability Coverage Section are hereby amended to provide that any arbitration under
such Section shall be entered into voluntarily by the parties and shall take place in Pennsylvania
or such other place in which the Insured has its principal place of business.

The Policy will be deemed to have been amended to the extent necessary to effectuate the purposes of
this endorsement.

The regulatory requirements of this Amendatory Endorsement shall supersede and take precedence over
any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or
contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions
comply with the applicable insurance laws of the state of Pennsylvania.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

Coverage Section:  ForeFront Employment Practices Liability Coverage Section (Federal)

Effective date of
this endorsement: July 12, 2005          Company: Federal Insurance Company

                                         Endorsement No. 3

                                         To be attached to and
                                         form a part of Policy No. 8181-1088
Issued to: LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.

---

### EMPLOYMENT PRACTICES LIABILITY COVERAGE SECTION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     Subparagraph (2) of Section II Definitions (M) of the Coverage Section identified above is amended to read in
        its entirety as follows:

        (2)     with respect to Insuring Clause (A), and Insuring Clause (B) if applicable, any **Independent
                Contractor**, but only if the **Insured Organization** agrees in writing, prior to or no later than thirty (30)
                days after the **Employment Claim** or **Third Party Claim** is made, to indemnify the **Independent
                Contractor** for liability arising out of any **Employment Claim** or **Third Party Claim**.

(2)     Section III Exclusions (A)(4) of the Coverage Section identified above is amended to read in its entirety as
        follows:

        (4)     for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or
                damage to or destruction of any tangible property including loss of use thereof whether or not it is
                damaged or destroyed; provided that this Exclusion (A)(4) shall not apply to any emotional distress,
                mental anguish or humiliation resulting from any **Discrimination, Harassment, Retaliation,
                Workplace Tort, Wrongful Employment Decision** or **Third Party Discrimination or Sexual
                Harassment** committed, attempted, or allegedly committed or attempted by an **Insured** and alleged
                in any **Employment Claim,** or any **Third Party Claim** if applicable;

The title and any headings in this endorsement are solely for convenience and form no part of the terms and
conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

---
Authorized Representative

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

# ForeFront Portfolio[SM]
## Fiduciary Liability Coverage Section

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
a stock insurance company, incorporated under the
laws of Indiana, herein called the **Company.**

**THIS COVERAGE SECTION PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS" UNLESS OTHERWISE SPECIFIED HEREIN, AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT. READ THE ENTIRE POLICY CAREFULLY.**

Item 1.   **Parent Corporation:**

    LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.
    11 LLOYD AVENUE
    LATROBE, PA 15650

Item 2.   **Maximum Aggregate Limit of Liability for this Coverage Section:**

    $ 2,000,000.00

Item 3.   **Coverage is only available for the following if indicated by X:**

    ☐ (A) Optional Insuring Clause (B): Voluntary Settlement Program Coverage

    ☐ (B) Optional Coverage Section IV: Defense Outside the Limits of Liability Coverage

Item 4.   **Deductible Amounts:**

    (A) Fiduciary Liability Coverage: Insuring Clause (A):     $0.00
    (B) Voluntary Settlement Program Coverage: Insuring Clause (B):     Not Covered

Item 5.   **Pending or Prior Litigation Dates:**

    (A)     Insuring Clauses (A):     7/12/2001
    (B)     Insuring Clause (B):     Not Applicable

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Section, the Company and the Insureds agree as follows:

---

## I.     INSURING CLAUSES

(A)     **Fiduciary Liability Coverage**

The **Company** shall pay **Loss** on behalf of the **Insureds** resulting from any **Fiduciary Claim** first made against such **Insured** during the **Policy Period**, or any applicable Extended Reporting Period, for **Wrongful Acts** by the **Insureds** or by any person for whose **Wrongful Acts** the **Insureds** are legally responsible.

(B)     **Voluntary Settlement Program Coverage (Optional)**

If the Voluntary Settlement Program Coverage is purchased, as set forth in Item 3 of the Declarations of this Coverage Section, the **Company** shall pay **Settlement Fees** on behalf of the **Insureds** following a **Settlement Program Notice** provided during the **Policy Period**, or any applicable Extended Reporting Period, in an amount not to exceed $100,000.  Such amount shall be part of and not in addition to the Limit of Liability, as set forth in Item 2 of the Declarations of this Coverage Section.

---

## II.    DEFINITIONS

For purposes of this Coverage Section:

(A)     **Administration** means:

(1)     giving advice to **Employees** with respect to any **Plan**;

(2)     providing interpretations with respect to any **Plan**; or

(3)     handling of records or effecting enrollment, termination or cancellation of **Employees** under any **Plan**.

(B)     **Claim** means for the purposes of coverage under:

(1)     Insuring Clause (A): any **Fiduciary Claim**; or

(2)     Insuring Clause (B): any **Settlement Program Notice**.

(C)     **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the **Insured Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

(D)     **Employee** means any natural person whose labor or service is engaged by and directed by the **Insured Organization**, including part-time, seasonal, leased and temporary employees as well as volunteers. **Employee** shall not include any independent contractor.

(E)     **Executive** means any natural person specified below:

(1)    duly elected or appointed directors, officers, members of the Board of Managers or management committee members of any **Insured Organization** incorporated in the United States of America;

(2)    in–house general counsel of any **Insured Organization** incorporated in the United States of America; or

(3)    equivalent positions of (1) or (2) above in any **Insured Organization** chartered in any other jurisdiction anywhere in the world.

(F)    **Fiduciary Claim** means:

    (1)    any of the following:

        (a)    a written demand for monetary damages or injunctive relief;

        (b)    a civil proceeding commenced by the service of a complaint or similar pleading;

        (c)    a criminal proceeding commenced by a return of an indictment;

        (d)    a formal administrative or regulatory proceeding commenced by the filing of a notice of charges, formal investigative order or similar document; or

        (e)    a written notice of commencement of an investigation by the Department of Labor or the Pension Benefit Guaranty Corporation;

        against an **Insured** for a **Wrongful Act**, including any appeal therefrom; or

    (2)    a written request received by an **Insured** to toll or waive a statute of limitations, relating to a potential **Fiduciary Claim** as described in paragraph (1) above.

(G)    **Insured** means the **Insured Organization**, any **Plan** and any **Insured Person**.

(H)    **Insured Person** means:

    (1)    any past, present or future **Executive, Employee** or trustee of the **Insured Organization** or of the **Sponsored Plan**; and

    (2)    any past, present or future natural person trustee or fiduciary of a multi-employer plan, when such person is added by specific written endorsement to this Coverage Section.

(I)     **Loss** means the total amount which any **Insured** becomes legally obligated to pay as a result of any **Claim** made against any **Insured** for **Wrongful Acts**, including, but not limited to, damages (including punitive or exemplary damages, or the multiple portion of any multiplied damage award, to the extent such damages are insurable under the law of any jurisdiction which has a substantial relationship to the **Insureds**, the **Company**, this **Policy** or the **Claim** and which is most favorable to the insurability of such damages), judgments, settlements, pre-judgment and post-judgment interest, **Settlement Fees** and **Defense Costs**. **Loss** does not include:

     (1)     any amount for which an **Insured Organization** or an **Insured Person** is absolved from payment by reason of any covenant, agreement (other than indemnification of an **Insured Person** by the **Insured Organization**) or court order;

     (2)     matters uninsurable under the law pursuant to which this **Policy** is construed;

     (3)     taxes, fines or penalties imposed by law, except:

          (a)     the five percent (5%) or less, or the twenty percent (20%) or less, civil penalties imposed upon an **Insured** as a fiduciary under Section 502(i) or (l), respectively, of the Employee Retirement Income Security Act of 1974, as amended; or

          (b)     if the Voluntary Settlement Program Coverage is purchased, as set forth in Item 3 of the Declarations of this Coverage Section, **Settlement Fees**; or

     (4)     any amount allocated to uncovered loss pursuant to Section X Allocation of the General Terms and Conditions.

(J)     **Plan** means:

     (1)     any **Sponsored Plan**; and

     (2)     any government-mandated insurance for workers compensation, unemployment, social security or disability benefits for **Employees**.

(K)     **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

(L)     **Pollution** means the actual, alleged or threatened discharge, release, escape or disposal of **Pollutants** into or on real or personal property, water or the atmosphere or any direction or request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so.

(M)     **Settlement Fees** means any fees, penalties or sanctions imposed by law under a **Settlement Program** that any **Insured** becomes legally obligated to pay as a result of **Wrongful Acts**. **Settlement Fees** shall not include costs of corrections, other than fees or penalties.

(N)     **Settlement Program** means any voluntary compliance resolution program or similar voluntary settlement program, administered by the Internal Revenue Service of the United States of America or any other governmental body, entered into by the **Insured Organization**.

(O)     **Settlement Program Notice** means prior written notice to the **Company** by the **Insured Organization** of its intent to enter into a **Settlement Program**.

(P)     **Sponsored Plan** means:

    (1)     any Employee Benefit Plan, Pension Benefit Plan or Welfare Benefit Plan, as each are defined in the Employee Retirement Income Security Act of 1974, as amended, which is operated solely by the **Insured Organization** or jointly by the **Insured Organization** and a labor organization for the benefit of the **Employees** of the **Insured Organization** located anywhere in the world and which existed on or before the inception date of this Coverage Section or which is created or acquired after the inception date of this Coverage Section (as provided in Section XI Changes in Exposure of the General Terms and Conditions Section);

    (2)     any other employee benefit plan or program not subject to Title 1 of the Employee Retirement Income Security Act of 1974, as amended, sponsored solely by the **Insured Organization** for the benefit of the **Employees**, including any excess benefit plan located anywhere in the world and which existed on or before the inception date of this Coverage Section or which is created or acquired after the inception date of this Coverage Section (as provided in Section XI Changes in Exposure of the General Terms and Conditions Section); or

    (3)     any other plan, fund, or program specifically included as a **Sponsored Plan** by endorsement to this Coverage Section.

**Sponsored Plan** shall not include any employee stock ownership plan created or acquired by the **Insured Organization** after the inception date of this Policy as set forth in Item 2 of the Declarations of the General Terms and Conditions Section (except as otherwise provided in Section V Creation or Acquisition of an ESOP of this Coverage Section) or any multi-employer plan regardless of the date such plan was created.

(Q)     **Wrongful Act** means with respect to any **Plan**:

    (1)     any breach of the responsibilities, obligations or duties imposed upon fiduciaries of the **Sponsored Plan** by the Employee Retirement Income Security Act of 1974, or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

    (2)     any negligent act, error or omission in the **Administration** of any **Plan** committed, attempted or allegedly committed or attempted by any **Insured**; or

    (3)     any other matter claimed against such **Insured** solely by reason of their service as a fiduciary of any **Sponsored Plan**.

---

**III.     EXCLUSIONS**

(A)     No coverage will be available under this Coverage Section for any **Claim** against an **Insured**:

    (1)     based upon, arising from, or in consequence of any circumstance, if written notice of such circumstance has been given under any policy of which this Coverage Section is a direct or indirect renewal or replacement and if such prior policy affords coverage (or would afford

such coverage except for the exhaustion of its limits of liability) for such **Claim**, in whole or in part, as a result of such notice;

(2) based upon, arising from, or in consequence of a written demand, suit, or other proceeding pending, or order, decree or judgment entered for or against any **Insured** on or prior to the applicable Pending or Prior Litigation Date as set forth in Item 5 of the Declarations of this Coverage Section, or the same or any substantially similar fact, circumstance or situation underlying or alleged therein;

(3) based upon, arising from, or in consequence of **Pollution**, including but not limited to any **Claim** for financial loss to any **Insured Organization** or **Plan**, its security holders or its creditors;

(4) for bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed;

(5) based upon, arising from, or in consequence of liability of others assumed by any **Insured** under any written or oral contract or agreement, provided that this Exclusion (A)(5) shall not apply to the extent that:

    (a) an **Insured** would have been liable in the absence of the contract or agreement; or

    (b) the liability was assumed in accordance with or under the agreement or declaration of trust pursuant to which the **Plan** was established;

(6) for the failure of the **Insured** to comply with any workers compensation, unemployment insurance, social security or disability benefits law or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world, except the Consolidated Omnibus Budget Reconciliation Act of 1985, or any amendments thereto or any rules or regulations promulgated thereunder;

(7) based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured**, if a final and non-appealable judgment or adjudication adverse to such **Insured** establishes such a deliberately fraudulent act or omission or willful violation; or

(8) based upon, arising from, or in consequence of any **Insured** having gained in fact any profit, remuneration or financial advantage to which such **Insured** was not legally entitled.

(B) No coverage will be available under this Coverage Section for **Loss**, other than **Defense Costs**,

(1) which constitutes the return or reversion to an employer of any contribution or asset of a **Plan**;

(2) which constitutes costs of compliance with any order for, grant of or agreement to provide non-monetary relief; or

(3) which constitutes benefits due or to become due under any **Plan**, or benefits which would be due under any **Plan** if such **Plan** complied with all applicable law, except to the extent that:

(a)    an **Insured** is a natural person and the benefits are payable by such **Insured** as a personal obligation; and

(b)    recovery for the benefits is based upon a covered **Wrongful Act.**

(C)    No coverage will be available under this Coverage Section for **Loss**, other than **Defense Costs**, resulting from any **Claim** based upon, arising from, or in consequence of the failure to collect an employer's contributions owed to a **Plan** unless the failure is because of the negligence of any **Insured**.

(D)    **Severability of Exclusions**

With respect to the Exclusions (A)(7) and (A)(8) in this Coverage Section, no fact pertaining to or knowledge possessed by any **Insured** shall be imputed to any other **Insured** to determine if coverage is available.

## IV.    DEFENSE OUTSIDE THE LIMITS OF LIABILITY (Optional)

Solely in the event that Defense Outside the Limits of Liability is purchased, as set forth in Item 3 of the Declarations of this Coverage Section, **Defense Costs** shall be in addition to, and not a part of, the Limit of Liability as set forth in Item 2 of the Declarations of this Coverage Section; provided that, when such Limit of Liability is exhausted by payment of **Loss**, other than **Defense Costs**, the **Company's** obligation to pay **Defense Costs** and its obligation to defend or continue to defend any **Claim** shall cease.

## V.    CREATION OR ACQUISITION OF AN ESOP

If the **Insured Organization** creates or directly or indirectly acquires an employee stock ownership plan ("ESOP"), the **Insured Organization** will promptly give the **Company** written notice thereof and all information requested by the **Company**. The **Company** shall provide to the **Insured Organization** a quotation for coverage for **Claims** based upon, arising from, or in consequence of such ESOP, subject to such terms, conditions, limitations of coverage and such additional premium as the **Company**, in its sole discretion, may require.

## VI.    TERMINATION OF PLAN

If an **Insured Organization** terminates a **Plan** before or after the inception date of this Coverage Section, coverage under this Coverage Section, with respect to such terminated **Plan**, shall continue until termination of this Coverage Section for those who were an **Insured** at the time of such **Plan** termination or who would have been an **Insured** at the time of such termination if this Coverage Section had been in effect, with respect to **Wrongful Acts** committed or allegedly committed prior to or after the date the **Plan** was terminated.

VII.    **OTHER INSURANCE**

If any **Loss** under this Coverage Section is insured under any other valid and collectible insurance policy(ies), prior or current, then this Coverage Section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this Coverage Section.

VIII.   **COORDINATION OF COVERAGE**

Any **Loss** covered under this Coverage Section and the Employment Practices Liability Coverage Section, if purchased as set forth in Item 4 of the Declarations of the General Terms and Conditions Section, shall be first covered under the Employment Practices Liability Coverage Section, subject to the terms, conditions and limitations therein.  Any remaining portion of such **Loss** otherwise covered under this Coverage Section which is not paid under the Employment Practices Liability Coverage Section shall be covered under this Coverage Section, subject to its terms, conditions and limitations.

Coverage Section:  ForeFront Fiduciary Liability Coverage Section (Federal)

Effective date of
this endorsement:  July 12, 2005                    Company:  Federal Insurance Company

                                                    Endorsement No. 1

                                                    To be attached to and
                                                    form a part of Policy No. 8181-1088

Issued to:  LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.

---

### PENNSYLVANIA AMENDATORY ENDORSEMENT
### TO THE FIDUCIARY LIABILITY COVERAGE SECTION

In consideration of the premium charged, it is agreed that:

1.      The Company will pay post- and pre-judgment interest to the extent that such interest is assessed against that portion of Loss paid by the Company under the Policy, even if the payment of such interest exceeds the applicable Limit of Liability.  Section II. Definitions (I) of this Coverage Section is amended accordingly.

The Policy will be deemed to have been amended to the extent necessary to effectuate the purposes of this endorsement.

The regulatory requirements of this Amendatory Endorsement shall supersede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the state of Pennsylvania.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

---
Authorized Representative

Coverage Section:  ForeFront Fiduciary Liability Coverage Section (Federal)

Effective date of
this endorsement: July 12, 2005                    Company: Federal Insurance Company

                                                   Endorsement No. 2

                                                   To be attached to and
                                                   form a part of Policy No. 8181-1088
Issued to: LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.

---

HIPAA EXTENSION ENDORSEMENT

In consideration of the premium charged, it is agreed that:

(1)     The definition of **Loss**, as defined in Section II Definitions (I) of the Coverage Section identified above, is
        amended by adding the following exception to subparagraph (3):

        (c)     any civil money penalties imposed upon an **Insured** for violation of the privacy provisions of the
                Health Insurance Portability and Accountability Act ("HIPAA"); provided the Company's maximum
                aggregate liability for all such civil money penalties on account of all **Claims** first made during the
                **Policy Period** shall be $25,000, which is a sublimit that further limits and does not increase the
                Company's maximum liability under this coverage section.

(2)     The definition of **Wrongful Act,** as defined in Section II Definitions (Q) of the Coverage Section identified
        above, is amended to include the following with respect to any **Plan**:

        (a)     any breach of the responsibilities, obligations or duties imposed upon fiduciaries of the **Sponsored
                Plan** by the Health Insurance Portability and Accountability Act of 1996 and any rules or regulations
                promulgated thereunder ("HIPAA"); or

        (b)     any other violation of HIPAA claimed against an **Insured** due solely to such **Insured's**  service as a
                fiduciary of any **Sponsored Plan**; or

        (c)     any actual or alleged negligent violation of HIPAA by an **Insured** in the **Administration** of any **Plan**.

(3)     Section III Exclusions (A)(6) of the Coverage Section identified above is amended to read in its entirety as
        follows:

                (6)     for the failure of the **Insured** to comply with any workers compensation, unemployment
                        insurance, social security or disability benefits law or any amendments thereto or any rules or
                        regulations promulgated thereunder, or any similar provisions of any federal, state, or local
                        statutory law or common law anywhere in the world, except:

---

(a) the Consolidated Omnibus Budget Reconciliation Act of 1985 and any amendments thereto or any rules or regulations promulgated thereunder; or

(b) the Health Insurance Portability and Accountability Act of 1996 and any rules or regulations promulgated thereunder ("HIPAA").

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

_____
Authorized Representative

Chubb Group of Insurance Companies
15 Mountain View Road
Warren, New Jersey 07059

*ForeFront Portfolio*[SM]
*Internet Liability Coverage Section*

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
a stock insurance company, incorporated under the
laws of Indiana, herein called the **Company.**

**THIS COVERAGE SECTION PROVIDES CLAIMS MADE COVERAGE, WHICH APPLIES ONLY TO "CLAIMS" FIRST MADE DURING THE "POLICY PERIOD", OR ANY EXTENDED REPORTING PERIOD. THE LIMIT OF LIABILITY TO PAY DAMAGES OR SETTLEMENTS WILL BE REDUCED AND MAY BE EXHAUSTED BY "DEFENSE COSTS", AND "DEFENSE COSTS" WILL BE APPLIED AGAINST THE DEDUCTIBLE AMOUNT. READ THE ENTIRE POLICY CAREFULLY.**

**Item 1.** **Parent Corporation:**

LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.
11 LLOYD AVENUE
LATROBE, PA 15650

**Item 2.** **Maximum Aggregate Limit of Liability for this Coverage Section:**

$100,000.00

**Item 3.** **Deductible Amount:**

$5,000.00

**Item 4.** **Pending or Prior Litigation Date:**

7/12/2004

**Item 5.** **Retroactive Date:**

N/A

**Item 6.** **Internet Site:**

http://www.le-natures.com

**Item 7.** **Other Covered Communications:**

None

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Section, the Company and the Insureds agree as follows:

**I.      INSURING CLAUSE**

**Internet Liability Coverage**

The **Company** shall pay **Loss** on behalf of the **Insureds** resulting from any **Internet Activity Claim** first made against such **Insureds** during the **Policy Period**, or any applicable Extended Reporting Period, for **Wrongful Acts** committed, on or after the Retroactive Date as set forth in Item 5 of the Declarations of this Coverage Section, by the **Insureds** or by any person for whose **Wrongful Acts** the **Insureds** are legally responsible.

**II.     DEFINITIONS**

For purposes of this Coverage Section:

(A)     **Claim** means **Internet Activity Claim**.

(B)     **Defense Costs** means that part of **Loss** consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees and experts' fees) and expenses (other than regular or overtime wages, salaries or fees of the directors, officers or employees of the **Insured Organization**) incurred in defending any **Claim** and the premium for appeal, attachment or similar bonds.

(C)     **Employee** means any natural person whose labor or service is engaged by and directed by the **Insured Organization**, including part-time, seasonal, leased and temporary employees as well as volunteers. **Employee** shall not include any independent contractor.

(D)     **Executive** means any natural person specified below:

(1)     duly elected or appointed directors, officers, members of the Board of Managers or management committee members of any **Insured Organization** incorporated in the United States of America;

(2)     in–house general counsel of any **Insured Organization** incorporated in the United States of America; or

(3)     equivalent positions of (1) or (2) above in any **Insured Organization** chartered in any other jurisdiction anywhere in the world.

(E)     **Insured** means the **Insured Organization** and any **Insured Person**.

(F)     **Insured Person** means any past, present or future **Executive** or **Employee** of the **Insured Organization**.

(G)     **Internet Activities** means:

(1)     display or other use of **Matter** on an **Internet Site**;

(2)     transmission of **Matter** via an **Internet Site**; or

(3)   dissemination of **Matter** by any other means of publication or communication shown in Item 7 of the Declarations of this Coverage Section.

(H)   **Internet Activity Claim** means:

    (1)   any of the following:

        (a)   a written demand for monetary damages or non-monetary relief;

        (b)   a civil proceeding commenced by the service of a complaint or similar pleading; or

        (c)   an arbitration proceeding;

    against an **Insured** for a **Wrongful Act**, including any appeal therefrom; or

    (2)   a written request received by an **Insured** to toll or waive a statute of limitations, relating to a potential **Internet Activity Claim** as described in paragraph (1) above.

(I)   **Internet Site** means any internet site(s) shown in Item 6 of the Declarations of this Coverage Section.

(J)   **Loss** means the total amount which any **Insured** becomes legally obligated to pay as a result of any **Claim** made against any **Insured** for **Wrongful Acts**, including, but not limited to, damages (including punitive or exemplary damages, to the extent such damages are insurable under the law of any jurisdiction which has a substantial relationship to the **Insureds**, the **Company**, this Policy or the **Claim** and which is most favorable to the insurability of such damages), judgments, settlements, pre-judgment and post-judgment interest, and **Defense Costs**. **Loss** does not include:

    (1)   any amount for which an **Insured Organization** or an **Insured Person** is absolved from payment by reason of any covenant, agreement (other than indemnification of an **Insured Person** by the **Insured Organization**) or court order;

    (2)   matters uninsurable under the law pursuant to which this Policy is construed;

    (3)   taxes, fines or penalties imposed by law, or the multiple portion of any multiplied damage award; or

    (4)   any amount allocated to uncovered loss pursuant to Section X Allocation of the General Terms and Conditions Section.

(K)   **Matter** means printed, verbal, numerical, audio or visual expression, or any other expression, regardless of the medium upon which such expression is fixed.

(L)   **Pollutants** means any substance located anywhere in the world exhibiting any hazardous characteristics as defined by, or identified on a list of hazardous substances issued by, the United States Environmental Protection Agency or any state, county, municipality or locality counterpart thereof. Such substances shall include, without limitation, solids, liquids, gaseous or thermal irritants, contaminants or smoke, vapor, soot, fumes, acids, alkalis, chemicals or waste materials. **Pollutants** shall also mean any other air emission, odor, waste water, oil or oil products, infectious or medical waste, asbestos or asbestos products and any noise.

(M)   **Pollution** means the actual, alleged or threatened discharge, release, escape or disposal of **Pollutants** into or on real or personal property, water or the atmosphere or any direction or

request that the **Insured** test for, monitor, clean up, remove, contain, treat, detoxify or neutralize **Pollutants**, or any voluntary decision to do so.

(N) **Product** means any tangible property offered for sale or otherwise disseminated by or through any **Insured Organization**. **Product** does not include **Matter** disseminated over an **Internet Site**.

(O) **Securities Laws** means the Securities Act of 1933, Securities Exchange Act of 1934, Investment Act of 1940, any state "blue sky" securities law, or any other federal, state or local securities law or any amendments thereto or any rules or regulations promulgated thereunder or any other provision of statutory or common law used to impose liability in connection with the offer to sell or purchase, or the sale or purchase of securities.

(P) **Wrongful Act** means any act, error or omission committed or attempted or allegedly committed or attempted by an **Insured Organization**, or by any **Insured Person** in his or her capacity as such, solely in connection with **Internet Activities** by or on behalf of the **Insured Organization**, including:

  (1) libel, slander, or oral or written publication of defamatory or disparaging material;

  (2) invasion of or interference with the right of privacy; or

  (3) infringement of copyright, service mark, trademark, trade dress or trade name or title or slogan or improper use of literary or artistic titles, formats or performances.

III. EXCLUSIONS

(A) No coverage will be available under this Coverage Section for any **Claim** against an **Insured**:

  (1) based upon, arising from, or in consequence of any circumstance, if written notice of such circumstance has been given under any policy of which this Coverage Section is a direct or indirect renewal or replacement and if such prior policy affords coverage (or would afford such coverage except for the exhaustion of its limits of liability) for such **Claim**, in whole or in part, as a result of such notice;

  (2) based upon, arising from, or in consequence of a written demand, suit, or other proceeding pending, or order, decree or judgment entered for or against any **Insured** on or prior to the Pending or Prior Litigation Date as set forth in Item 4 of the Declarations of this Coverage Section, or the same or any substantially similar fact, circumstance, situation underlying or alleged therein;

  (3) based upon, arising from, or in consequence of **Pollution**, including but not limited to any **Claim** for financial loss to any **Insured Organization** or its security holders, creditors or customers;

  (4) based upon, arising from, or in consequence of bodily injury, mental anguish, emotional distress, sickness, disease or death of any person or damage to or destruction of any tangible property including loss of use thereof whether or not it is damaged or destroyed; provided that this Exclusion (A)(4) shall not apply to any mental anguish or emotional distress;

  (5) based upon, arising from, or in consequence of allegations of price fixing, restraint of trade, monopolization, unfair trade practices or any actual or alleged violation of the Federal Trade Commission Act, the Sherman Anti-Trust Act, the Clayton Act, or any

other federal statutory provision involving anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint of trade activities, and any amendments thereto or any rules or regulations promulgated thereunder or in connection with such statutes; or any similar provision of any federal, state, or local statutory law or common law anywhere in the world;

(6)    based upon, arising from, or in consequence of any actual or alleged liability of an **Insured** under any written or oral contract or agreement, provided that this Exclusion (A)(6) shall not apply to the extent that the **Insured** would have been liable in the absence of the contract or agreement;

(7)    based upon, arising from, or in consequence of any actual or alleged:

    (a)    wrong description of the price or authenticity of any **Product**;

    (b)    failure of any **Product** to conform with advertised quality or performance, or otherwise to satisfy any standard of quality or performance; or

    (c)    sale or offer for sale of any **Product** that actually or allegedly infringes upon the name, design or logo of another product;

(8)    based upon, arising from, or in consequence of any actual or alleged infringement, contribution to infringement or inducement of infringement of any patent or misappropriation of trade secrets;

(9)    based upon, arising from, or in consequence of any actual or alleged violation of the **Securities Laws**;

(10)    based upon, arising from, or in consequence of any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted or allegedly committed or attempted in connection with the rendering of, or actual or alleged failure to render, any professional services for others by any person or entity otherwise entitled to coverage under this Coverage Section;

(11)    for an actual or alleged violation of the responsibilities, obligations or duties imposed by the Employee Retirement Income Security Act of 1974, or any amendments thereto or any rules or regulations promulgated thereunder, or any similar provisions of any federal, state, or local statutory law or common law anywhere in the world;

(12)    brought or maintained by or on behalf of any **Insured**;

(13)    based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such **Insured**, if a final and non-appealable judgment or adjudication adverse to such **Insured** establishes such a deliberately fraudulent act or omission or willful violation; or

(14)    based upon, arising from, or in consequence of such **Insured** having gained in fact any profit, remuneration or financial advantage to which such **Insured** was not legally entitled.

(B)    No coverage will be available under this Coverage Section for **Loss**, other than **Defense Costs**, which constitutes costs of compliance with any order for, grant of or agreement to provide non-monetary relief.

(C)    **Severability of Exclusions**

With respect to the Exclusions (A)(13) and (A)(14) in this Coverage Section:

(1)     no fact pertaining to or knowledge possessed by any **Insured Person** shall be imputed to any other **Insured Person** to determine if coverage is available; and

(2)     only facts pertaining to and knowledge possessed by any past, present or future Chief Financial Officer, President or Chairperson of any **Insured Organization** shall be imputed to any **Insured Organization** to determine if coverage is available.

## IV.     OTHER INSURANCE

If any **Loss** under this Coverage Section is insured under any other valid and collectible insurance policy(ies), prior or current, then this Coverage Section shall cover such **Loss**, subject to its limitations, conditions, provisions and other terms, only to the extent that the amount of such **Loss** is in excess of the amount of such other insurance whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as specific excess insurance over the Limit of Liability provided in this Coverage Section.

Coverage Section:  ForeFront Portfolio Internet Liability Coverage Section (Federal)

Effective date of
this endorsement:  July 12, 2005          Company:  Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8181-1088

Issued to:  LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.

---

**PENNSYLVANIA AMENDATORY ENDORSEMENT
TO THE INTERNET LIABILITY COVERAGE SECTION**

In consideration of the premium charged, it is agreed that:

1.　　The Company will pay post- and pre-judgment interest to the extent that such interest is assessed against that portion of Loss paid by the Company under the Policy, even if the payment of such interest exceeds the applicable Limit of Liability.  Section II. Definitions (J) of this Coverage Section is amended accordingly.

The Policy will be deemed to have been amended to the extent necessary to effectuate the purposes of this endorsement.

The regulatory requirements of this Amendatory Endorsement shall supersede and take precedence over any provisions of the Policy or any endorsement to the Policy, whenever added, that are inconsistent with or contrary to the provisions of this Amendatory Endorsement, unless such Policy or endorsement provisions comply with the applicable insurance laws of the state of Pennsylvania.

All other terms, conditions and limitations of this policy shall remain unchanged.

_Robert Hamburger_

---
Authorized Representative

14-02-4201 (04/2001 ed.)          Page 1

**Chubb Group of Insurance Companies**
15 Mountain View Road
Warren, New Jersey 07059

# ForeFront Portfolio<sup>SM</sup>
## Crime Coverage Section

**DECLARATIONS**

**FEDERAL INSURANCE COMPANY**
a stock insurance company, incorporated under the
laws of Indiana, herein called the **Company**.

**READ THE ENTIRE POLICY CAREFULLY.**

**Item 1.  Parent Corporation:**

LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.
11 LLOYD AVENUE
LATROBE, PA 15650

**Item 2.  Coverage is only available for the following if indicated by X:**

| Insuring Clauses | Limits of Liability | Deductible Amount |
|---|---|---|
| (A) ☒ Employee Theft: Insuring Clause (A): | $300,000.00 | $5,000.00 |
| (B) ☒ Premises: Insuring Clause (B): | $25,000.00 | $5,000.00 |
| (C) ☒ In Transit: Insuring Clause (C): | $25,000.00 | $5,000.00 |
| (D) ☒ Forgery:  Insuring Clause (D): | $300,000.00 | $5,000.00 |
| (E) ☒ Computer Fraud: Insuring Clause (E): | $300,000.00 | $5,000.00 |
| (F) ☒ Funds Transfer Fraud: Insuring Clause (F): | $100,000.00 | $5,000.00 |
| (G) ☐ Money Order And Counterfeit Currency Fraud: Insuring Clause (G): | Not Covered | Not Covered |
| (H) ☐ Credit Card Fraud: Insuring Clause (H): | Not Covered | Not Covered |
| (I) ☒ Client Coverage: Insuring Clause (I): | $100,000.00 | $5,000.00 |
| (J) ☒ Expense Coverage: Insuring Clause (J): | $10,000.00 | Not Applicable |

**Item 3.  Coverage only applies as indicated by X.**

(A) ☒ Loss Sustained; or

(B) ☐ Loss Discovered

In consideration of payment of the premium and subject to the Declarations, General Terms and Conditions, and the limitations, conditions, provisions and other terms of this Coverage Section, the Company and the Insureds agree as follows:

I.   **INSURING CLAUSES**

(A)   **Employee Theft Coverage**

The **Company** shall pay the **Parent Corporation** for direct loss sustained by an **Insured** resulting from **Theft** or **Forgery** committed by an **Employee** acting alone or in collusion with others.

(B)   **Premises Coverage**

The **Company** shall pay the **Parent Corporation** for direct loss sustained by an **Insured** resulting from:

(1)   **Robbery; Safe Burglary;** or unlawful taking of **Money** or **Securities;** by a **Third Party;** or

(2)   actual destruction or disappearance of **Money** or **Securities;**

within or from the **Premises** or **Banking Premises.** Coverage under this Insuring Clause shall also include:

(a)   loss of or damage to **Property** by **Robbery** or attempted **Robbery** within the **Premises;**

(b)   loss of or damage to such **Property** contained within any safe which results from **Safe Burglary** or attempted **Safe Burglary** within the **Premises;**

(c)   damage to a locked safe, cash drawer, cash box or cash register within the **Premises** by felonious entry or attempted felonious entry or loss by felonious abstraction of such container from within the **Premises;** and

(d)   damage to the **Premises** resulting from **Safe Burglary** or **Robbery;**

committed by a **Third Party.**

(C)   **In Transit Coverage**

The **Company** shall pay the **Parent Corporation** for direct loss sustained by an **Insured** resulting from:

(1)   **Robbery;** or unlawful taking of **Money** or **Securities;** by a **Third Party;** or

(2)   actual destruction or disappearance of **Money** or **Securities;**

while **In Transit** or while temporarily within the home of an **Employee** or a partner of an **Insured Organization.** Coverage under this Insuring Clause shall also include:

(a)   damage to **Property** by **Robbery** while **In Transit;** and

     (b)     loss by the unlawful taking of **Property** temporarily within the home of an **Employee** or a partner of an **Insured Organization**;

committed by a **Third Party**.

**(D)**     **Forgery Coverage**

The **Company** shall pay the **Parent Corporation** for direct loss sustained by an **Insured** resulting from **Forgery** or alteration of a **Financial Instrument** committed by a **Third Party**.

**(E)**     **Computer Fraud Coverage**

The **Company** shall pay the **Parent Corporation** for direct loss sustained by an **Insured** resulting from **Computer Fraud** committed by a **Third Party**.

**(F)**     **Funds Transfer Fraud Coverage**

The **Company** shall pay the **Parent Corporation** for direct loss sustained by an **Insured** resulting from **Funds Transfer Fraud** committed by a **Third Party**.

**(G)**     **Money Orders And Counterfeit Currency Fraud Coverage**

The **Company** shall pay the **Parent Corporation** for direct loss sustained by an **Insured** resulting from **Money Orders And Counterfeit Currency Fraud** committed by a **Third Party**.

**(H)**     **Credit Card Fraud Coverage**

The **Company** shall pay the **Parent Corporation** for direct loss sustained by an **Insured** resulting from **Credit Card Fraud** committed by a **Third Party**.

**(I)**     **Client Coverage**

The **Company** shall pay the **Parent Organization** for direct loss sustained by a **Client** resulting from **Theft** or **Forgery** committed by an **Employee** not in collusion with such **Client's** employees.

**(J)**     **Expense Coverage**

If Expense Coverage is purchased, as set forth in Item 2(J) of the Declarations for this Coverage Section, the **Company** shall pay the **Parent Organization** for:

     (1)     **Investigative Expenses** resulting from any direct loss covered under Insuring Clauses (A) through (I); or

     (2)     **Computer Violation Expenses** resulting from any direct loss covered under Insuring Clauses (A), (E) or (I);

incurred by any **Insured Organization** in the amount set forth in Item 2(J) of the Declarations for this Coverage Section, solely if such covered direct loss is in excess of the Deductible Amount applicable to such covered direct loss. Such amount shall be part of and not in addition to the Limit of Liability applicable to such covered direct loss.

## II.  DEFINITIONS

For the purposes of this Coverage Section:

(A)  **Banking Premises** means the interior portion of a building occupied by, or the night depository chute or safe maintained by, any bank, trust company or similar institution.

(B)  **Client** means a customer of an **Insured Organization** to whom an **Insured Organization** provides goods or services under written contract or for a fee.

(C)  **Computer Fraud** means the unlawful taking of **Money, Securities** or **Property** resulting from a **Computer Violation**.

(D)  **Computer System** means a computer or network of computers, including its input, output, processing, storage and communication facilities, and shall include off-line media libraries.

(E)  **Computer Violation** means an unauthorized:

    (1)  entry into or deletion of data from a **Computer System**;

    (2)  change to data elements or program logic of a **Computer System**, which is kept in machine readable format; or

    (3)  introduction of instructions, programmatic or otherwise, which propagate themselves through a **Computer System**;

directed solely against any **Insured Organization**.

(F)  **Computer Violation Expenses** means reasonable expenses, other than an **Insured Organization's** internal corporate costs (such as employee remuneration), incurred by an **Insured Organization** with the **Company's** prior written consent to reproduce or duplicate damaged or destroyed electronic **Data** or computer programs. If such computer programs cannot be duplicated from other computer programs, then **Computer Violation Expenses** shall also include reasonable costs incurred for computer time, computer programmers, technical experts or consultants to restore the computer programs to substantially the same level of operational capability immediately preceding the covered direct loss. **Computer Violation Expenses** shall not include expenses incurred by any **Client**.

(G)  **Credit Card Fraud** means the **Forgery** or alteration of, on or in, any written instrument required in connection with any credit card issued to an **Insured Organization** or at the request of an **Insured Organization**, to any partner, officer or **Employee** of an **Insured Organization**.

(H)  **Data** means information contained in records, accounts, microfilms, tapes or other records, whether or not contained in a **Computer System**.

(I)    **Discovery** or **Discovered** means knowledge acquired by an **Executive** or **Insurance Representative** of an **Insured** which would cause a reasonable person to believe a covered loss has occurred or an occurrence has arisen that may subsequently result in a covered loss. This includes loss:

    (1)    sustained prior to the inception date of any coverage under this Coverage Section;

    (2)    which does not exceed the Deductible Amount as set forth in the Declarations of this Coverage Section; or

    (3)    the exact amount or details of which are unknown.

    **Discovery** or **Discovered** shall not include knowledge acquired by an **Executive** or **Insurance Representative** of an **Insured** acting alone or in collusion with an **Employee**, or the knowledge possessed by any **Executive** or **Insurance Representative** who is a participant in the **Theft** or **Forgery**.

(J)    **Employee** means any:

    (1)    natural person in the regular service of an **Insured Organization** in the ordinary course of such **Insured Organization's** business, whom such **Insured Organization** governs and directs in the performance of such service, including any part-time, seasonal, leased and temporary employees as well as volunteers;

    (2)    **Executive** while performing acts within the scope of the usual duties of an **Employee**; or

    (3)    natural person fiduciary, trustee, administrator or **Employee** of a **Sponsored Plan** and any other natural person required to be bonded in connection with such **Sponsored Plan** by Title 1 of the Employee Retirement Income Security Act of 1974, as amended.

(K)    **Executive** means any natural person specified below:

    (1)    duly elected or appointed directors, officers, members of the Board of Managers or management committee members of any **Insured Organization** incorporated in the United States of America;

    (2)    in–house general counsel of any **Insured Organization** incorporated in the United States of America; or

    (3)    equivalent positions of (1) or (2) above in any **Insured Organization** chartered in any other jurisdiction anywhere in the world.

(L)    **Financial Instrument(s)** means checks, drafts or similar written promises, orders or directions to pay a sum certain in money, that are made, drawn by or drawn upon an **Insured Organization** or by anyone acting as an **Insured Organization's** agent, or that are purported to have been so made or drawn.

(M)    **Forgery** means the signing of another natural person's name with the intent to deceive, but does not mean a signature that includes one's own name, with or without authority, in any capacity for any purpose. Mechanically or electronically produced or reproduced signatures shall be treated the same as hand-written signatures.

(N)     **Funds Transfer Fraud** means fraudulent written, electronic, telegraphic, cable, teletype or telephone instructions issued to a financial institution directing such institution to transfer, pay or deliver **Money** or **Securities** from any account maintained by an **Insured Organization** at such institution, without an **Insured Organization's** knowledge or consent.

(O)     **Insurance Representative** means an **Employee**, including a risk manager, designated to represent an **Insured** for the purpose of effecting and maintaining insurance.

(P)     **Insured** means the **Insured Organization** and any **Sponsored Plan**.

(Q)     **In Transit** means being conveyed outside the **Premises**, from one person or place to another, by the **Insured Organization** within the custody of:

   (1)     an **Employee** or a partner of an **Insured Organization**; or

   (2)     a person authorized by an **Insured Organization** to have custody of **Money, Securities** or **Property**.

Such conveyance begins immediately upon receipt of **Money, Securities** or **Property**, by the person(s) described in (1) or (2) above, from any **Insured Organization**, and ceases immediately upon delivery to the designated recipient or its agent.

(R)     **Investigative Expenses** means reasonable expenses, other than an **Insured Organization's** internal corporate costs (such as employee remuneration), incurred by an **Insured Organization** with the **Company's** prior written consent to establish the existence and amount of a covered loss. **Investigative Expenses** shall not include expenses incurred by any **Client**.

(S)     **Money** means currency, coin, bank notes and bullion.

(T)     **Money Orders And Counterfeit Currency Fraud** means the good faith acceptance:

   (1)     in exchange for merchandise, **Money** or services, of any post office or express money order, issued or purporting to have been issued by any post office or express company, if such money order is not paid upon presentation; or

   (2)     in the regular course of business, of counterfeit United States of America or Canadian paper currency.

(U)     **Premises** means the interior portion of a building occupied by an **Insured Organization** in conducting its business.

(V)     **Property** means tangible property other than **Money** or **Securities**.

(W)     **Robbery** means the unlawful taking of **Money, Securities** or **Property** from the custody of an **Employee**, or other person (except a person acting as a watchman, porter or janitor) authorized by an **Insured Organization** to have custody of such **Money, Securites** or **Property**, by violence or threat of violence, committed in the presence and cognizance of such person.

(X)     **Safe Burglary** means the unlawful taking of **Money, Securities** or **Property** by forcible or violent entry evidenced by visible marks, from a locked vault or safe located within the **Premises**.

(Y)     **Salary** means compensation an **Insured Organization** pays an **Employee**, including but not limited to bonus, commission, incentive payments, and the cost of health, welfare and pension benefits.

(Z)     **Securities** means negotiable and non-negotiable instruments representing either **Money** or **Property**.

(AA)    **Sponsored Plan** means:

> (1)    any Employee Benefit Plan, Pension Benefit Plan, Welfare Benefit Plan, as each are defined in the Employee Retirement Income Security Act of 1974, as amended, which is operated solely by the **Insured Organization** or jointly by the **Insured Organization** and a labor organization for the benefit of the **Employees** of the **Insured Organization** located anywhere in the world and which existed on or before the inception of this Coverage Section or which is created or acquired after the inception of this Coverage Section;

> (2)    any other employee benefit plan or program not subject to Title 1 of the Employee Retirement Income Security Act of 1974, as amended, sponsored solely by the **Insured Organization** for the benefit of the **Employees**, including any excess benefit plan located anywhere in the world and which existed on or before the inception of this Coverage Section or which is created or acquired after the inception of this Coverage Section; or

> (3)    any other plan, fund, or program specifically included as a **Sponsored Plan** by endorsement to this Coverage Section.

> **Sponsored Plan** shall not include any multi-employer plan.

(BB)    **Theft** means the unlawful taking of **Money**, **Securities** or **Property** to the deprivation of:

> (1)    an **Insured**, solely for the purposes of Insuring Clause (A); or

> (2)    a **Client**, solely for the purposes of Insuring Clause (I).

(CC)    **Third Party** means a person other than an **Insured** or **Employee**.

---

**III.     EXCLUSIONS**

(A)     No coverage will be available under this Coverage Section for:

> (1)    loss resulting directly or indirectly from any authorized or unauthorized trading of **Money**, **Securities** or **Property**, whether or not in the name of the **Insured** and whether or not in a genuine or fictitious account; provided that this Exclusion (A)(1) shall not apply to direct losses caused by **Theft** or **Forgery** which result in improper financial gain to an **Employee** (direct losses as used herein shall mean only the amount of improper financial gain to such **Employee**, which shall not include **Salary**, commissions, fees or other compensation, including but not limited to promotions and raises associated with employment, paid by the **Insured** to such **Employee**);

> (2)    loss of trade secrets, confidential processing methods or other confidential information of any kind;

(3)     **Theft** or **Forgery** committed against an **Insured Organization** by a partner of such **Insured Organization** whether acting alone or in collusion with others; provided that, if **Theft** or **Forgery** committed by such partner would have resulted in a covered loss, the **Company** shall pay the amount which exceeds such partner's percentage ownership of the **Insured Organization**, on the day immediately preceding the date of **Discovery**, multiplied by the **Insured Organization's** total assets as reflected in such **Insured Organization's** most recent audited financial statements;

(4)     loss due to declared or undeclared war, civil war, insurrection, rebellion or revolution, military, naval or usurped power, governmental intervention, expropriation or nationalization; or any act or condition incident to any of the foregoing;

(5)     loss due to nuclear reaction, nuclear radiation or radioactive contamination;

(6)     loss of income not realized as the result of a covered loss;

(7)     indirect or consequential loss of any kind; provided that this Exclusion (A)(7) shall not apply to otherwise covered **Investigative Expenses** and **Computer Violation Expenses** under Insuring Clause (J);

(8)     expenses incurred:

   (a)     as a result of the reconstitution of **Data** if an **Insured Organization** knowingly uses illegal copies of programs;

   (b)     to render the **Data** usable by replacement processing equipment;

   (c)     to design, update or improve software or programs or to perfect their operation or performance; or

   (d)     as a result of an alteration in **Data** held on magnetic media due to the effect of magnetic fields, their incorrect use or the obsolescence of the **Computer System**;

(9)     loss caused by an **Employee** which is sustained by an **Insured**:

   (a)     after an **Insured** becomes aware of a **Theft, Forgery,** or other fraudulent or dishonest act committed by such **Employee** while employed with an **Insured**;

   (b)     after an **Executive** or **Insurance Representative** acquires at any time knowledge of fraud or dishonesty, involving **Money, Securities** or other property valued at twenty-five thousand dollars ($25,000) or more, committed prior to employment with an **Insured**; or

   (c)     more than sixty (60) days following the termination of such **Employee**.

(10)    loss due to fire, provided that this Exclusion (A)(10) shall not apply to:

   (a)     loss of **Money** or **Securities**; or

   (b)     damage to any safe or vault caused by the application of fire thereto for the purposes of **Safe Burglary**;

(11)    fees, costs or expenses incurred or paid by an **Insured** in defending or prosecuting any legal proceeding or claim; provided that this Exclusion (A)(11) shall not apply to the coverage provided under Section VI Legal Expenses Extension;

(12)    loss due to an **Insured** knowingly having given or surrendered **Money, Securities** or **Property** in any exchange or purchase with a **Third Party**, not in collusion with an **Employee**; provided that this Exclusion (A)(12) shall not apply to **Money Orders And Counterfeit Currency Fraud**;

(13)    loss sustained by one **Insured** to the advantage of any other **Insured**;

(14)    loss of or damage to **Money, Securities** or **Property** while in the custody of any bank, trust company, similar recognized place of safe deposit, armored motor vehicle company or any person who is duly authorized by the **Insured Organization** to have custody of the property; provided that this Exclusion (A)(14) shall not apply to the extent that coverage under this Coverage Section is excess of the amount recovered or received by the **Insured Organization** under:

    (a)    the **Insured Organization's** contract, if any, with, or insurance carried by, any of the foregoing; or

    (b)    any other insurance or indemnity in force which would cover the loss in whole or in part;

(15)    loss due to the unlawful taking of **Money, Securities** or **Property, Computer Fraud** or any other fraudulent, dishonest or criminal act (other than **Robbery** or **Safe Burglary**), by any authorized representative of the **Insured Organization**, other than an **Employee**, provided that such authorized representative is not acting in collusion with any **Employee**.

(B)    No coverage will be available under Insuring Clause (A) or (I) for loss caused by any broker, factor, commission merchant, consignee, contractor, independent contractor or other agent or representative of the same general character.

(C)    No coverage will be available under Insuring Clause (B) or (C) for:

    (1)    loss or damage due to **Forgery, Computer Fraud** or **Funds Transfer Fraud**; or

    (2)    loss of or damage to **Money, Securities** or **Property** while in the mail or in the custody of a carrier for hire other than an armored motor vehicle company.

(D)    No coverage will be available under Insuring Clauses (B), (C), (E) and (F) for loss or damage of **Money, Securities** or other property as a result of a kidnap, ransom or other extortion payment (as distinct from **Robbery**) surrendered to any person as a result of a threat to do bodily harm to any person or a threat to do damage to the **Premises** or other property.

(E)    No coverage will be available under Insuring Clause (D) for loss due to **Forgery** or alteration of:

    (1)    any **Financial Instrument** committed by any **Third Party** in collusion with any **Employee**; or

(2)    any registered or coupon obligations issued or purported to have been issued by the **Insured**, or any coupons whether attached or detached.

(F)    No coverage will be available under Insuring Clause (H) for loss caused by any forgery or alteration of, on or in any written instrument; provided that this Exclusion (F) shall not apply if:

    (1)    the provisions, conditions and other terms under which the involved credit card was issued were fully complied with; and

    (2)    the **Insured Organization** is legally liable to the issuer of such credit card for such loss.

(G)    No coverage will be available under this Coverage Section if the Loss Discovered option is purchased, as set forth in Item 3 of the Declarations of this Coverage Section, for any loss that the **Insured** is aware of prior to the inception date of this Coverage Section.

(H)    If the Loss Sustained option is purchased, as set forth in Item 3 of the Declarations of this Coverage Section, no coverage will be available under this Coverage Section for:

    (1)    loss unless sustained by any **Insured** prior to the termination of this Coverage Section as to such **Insured** and **Discovered** and written notice thereof is given to the **Company** within sixty (60) days following such termination;

    (2)    loss unless sustained prior to the termination of any Insuring Clause or any particular coverage offered under any Insuring Clause and **Discovered** and written notice thereof is given to the **Company** within sixty (60) days following such termination; or

    (3)    loss unless sustained prior to the termination of this Coverage Section in its entirety, and **Discovered** and written notice thereof is given to the **Company**:

        (a)    within sixty (60) days following such termination, if this Coverage Section is not renewed with the **Company**;

        (b)    prior to such termination, if this Coverage Section is renewed with the **Company**; or

        (c)    within one (1) year following such termination, if the termination results from the voluntary liquidation or voluntary dissolution of the **Parent Corporation**.

(I)    If the Loss Discovered option is purchased as set forth in Item 3 of the Declarations of this Coverage Section, no coverage will be available under this Coverage Section for:

    (1)    loss unless sustained by any **Insured**, **Discovered** and written notice thereof is given to the **Company** prior to the termination of this Coverage Section as to such **Insured**;

    (2)    loss unless sustained, **Discovered** and written notice thereof is given to the **Company** prior to the termination of any Insuring Clause or any particular coverage offered under any Insuring Clause;

    (3)    loss unless sustained, **Discovered** and written notice thereof is given to the **Company** prior to the termination of this Coverage Section in its entirety; or

(4)    loss unless sustained prior to the termination of this Coverage Section and **Discovered** and written notice thereof is given to the **Company**, within one (1) year following such termination if the termination results from the voluntary liquidation or voluntary dissolution of the **Parent Corporation**.

## IV. OWNERSHIP

(A)    Solely for the purposes of Insuring Clauses (A) through (H), the **Company's** liability under this Coverage Section will apply only to the **Money, Securities** or **Property** owned by the **Insured Organization** or for which the **Insured Organization** is legally liable, or held by the **Insured Organization** in any capacity whether or not the **Insured Organization** is liable; provided that:

(1)    the **Company** will not be liable for damage to the **Premises** unless the **Insured Organization** is the owner or is liable for such damage; or

(2)    with respect to Insuring Clause (A) the **Company's** liability will not apply to **Money, Securities** or **Property** of a **Client**.

(B)    Solely for the purposes of Insuring Clause (I), the **Company's** liability under this Coverage Section will apply only to the **Money, Securities** or other **Property** of a **Client**, which is held by the **Insured Organization** in any capacity or for which the **Insured Organization** is legally liable.

## V. SPONSORED PLAN

Solely with respect to any **Sponsored Plan**, payment by the **Company** for covered loss to the **Parent Corporation** shall be held by such **Parent Corporation** for the use and benefit of the **Sponsored Plan** sustaining such loss. The Limit of Liability applicable to any **Sponsored Plan** shall equal the lesser of ten percent (10%) of the **Sponsored Plan's** assets as of the beginning of such **Sponsored Plan's** fiscal year or five hundred thousand dollars (**$500,000**) ("Amended Limit of Liability"); provided, however, that the following additional conditions shall also apply with respect to such coverage:

(1)    Loss Involving One **Sponsored Plan**:

(a)    If the applicable Limit of Liability as set forth in Item 2 of the Declarations of this Coverage Section is less than the Amended Limit of Liability, then the applicable Limit of Liability shall be the Amended Limit of Liability; or

(b)    If the applicable Limit of Liability as set forth in Item 2 of the Declarations of this Coverage Section equals or exceeds the Amended Limit of Liability, then the applicable Limit of Liability shall be the Limit of Liability as set forth in Item 2 of the Declarations of this Coverage Section; or

(2)    Loss Involving More Than One **Sponsored Plan**:

    (a)    If the applicable Limit of Liability as set forth in Item 2 of the Declarations of this Coverage Section is less than the Amended Limit of Liability as calculated for each **Sponsored Plan**, then the applicable Limit of Liability for each **Sponsored Plan** shall be the Amended Limit of Liability as calculated for each **Sponsored Plan**; or

    (b)    If the applicable Limit of Liability as set forth in Item 2 of the Declarations of this Coverage Section equals or exceeds the Amended Limit of Liability as calculated for all such **Sponsored Plans**, then the applicable Limit of Liability for all such **Sponsored Plans** combined shall be the Limit of Liability as set forth in Item 2 of the Declarations of this Coverage Section.

For the purposes of **Sponsored Plan** coverage hereunder, the words "sixty (60) days" are deleted from the exclusions applicable to this Coverage Section, wherever they appear, and the words "one (1) year" are substituted in place thereof. Solely with respect to loss sustained by a **Sponsored Plan**, no Deductible Amount shall apply to such loss.

## VI. LEGAL EXPENSES EXTENSION

In addition to the Limits of Liability set forth in the Declarations, the **Company** shall be liable for:

(A)    with respect to **Forgery** coverage under Insuring Clause (D), reasonable court costs and attorneys' fees incurred and paid with the **Company's** prior written consent in defending an **Insured Organization** or an **Insured Organization's** bank in any legal proceeding brought against it to enforce payment of a **Financial Instrument**.

(B)    with respect to **Credit Card Fraud** coverage under Insuring Clause (H), reasonable court costs and attorneys' fees incurred and paid with the **Company's** prior written consent in defending an **Insured Organization** in any legal proceeding brought against it to enforce payment of a written instrument, required in connection with any credit card.

## VII. LIABILITY FOR PRIOR LOSSES

(A)    If the Loss Sustained option is purchased, as set forth in Item 3 of the Declarations for this Coverage Section:

    (1)    Coverage will be available for loss sustained prior to the inception date of this Coverage Section, or the effective date of coverage for any additional **Insureds**, or the effective date of any coverage added by endorsement, subject to the following:

        (a)    an **Insured** or some predecessor in interest of such **Insured** carried a prior bond or policy which afforded coverage for a loss sustained during the period of such prior bond or policy;

        (b)    such coverage continued without interruption from the time such loss was sustained until the inception date or effective date specified in paragraph (1) above;

        (c)    such loss was first **Discovered** by an **Insured** after the time allowed for discovery under the last such policy; and

    (d)    some or all of the coverage of an Insuring Clause under this Coverage Section would be applicable to such prior loss;

   (2)    If such prior bond or policy carried by the **Insured** or predecessor in interest of such **Insured** was issued by the **Company** or its affiliates, such prior bond or policy shall terminate as of the inception of this Coverage Section and such prior bond or policy shall not cover any loss not discovered and noticed to the **Company** prior to the inception of this Coverage Section; and

   (3)    The **Insured** shall neither be entitled to a separate recovery under each policy in force at the time any part of the prior loss was sustained, nor shall the **Insured** be entitled to recover the sum of the limits of liability of any such policies. The **Company's** maximum liability for the prior loss shall not exceed the lesser of either the limit of liability of the policy immediately preceding this Coverage Section under which part of the prior loss was sustained, or the applicable Limit of Liability as set forth in the Declarations of this Coverage Section.

(B)    If the Loss Discovered option is purchased, as set forth in Item 3 of the Declarations of this Coverage Section:

   (1)    Coverage will be available for loss sustained at any time and **Discovered** during the **Policy Period**, provided that coverage for loss sustained prior to the effective date of this Coverage Section, or the effective date of coverage for any additional **Insureds**, or the effective date of any coverage added by endorsement, is subject to the following:

       (a)    if an **Insured** or some predecessor in interest of such **Insured** carried a prior bond or policy which afforded coverage for a loss sustained during the period of such prior bond or policy and such prior bond or policy was not issued by the **Company** or its affiliates and such loss was first **Discovered** by an **Insured** prior to the expiration of the time allowed for discovery under the last such policy, then no coverage shall be available under this Coverage Section, unless the total amount of covered loss exceeds the limit of liability of the last such bond or policy carried by the **Insured** or predecessor in interest of such **Insured,** and the **Company's** Limit of Liability for any such loss will be in excess of the limit of liability of the last bond or policy subject to all of the terms and conditions of this Coverage Section; or

       (b)    if an **Insured** or some predecessor in interest of such **Insured** carried a prior bond or policy which afforded coverage for a loss sustained during the period of such prior bond or policy and such prior bond or policy was issued by the **Company** or its affiliates then such prior bond or policy shall terminate as of the inception of this Coverage Section and such prior bond or policy shall not cover any loss not discovered and noticed to the **Company** prior to the inception of this Coverage Section and then the **Company's** Limit of Liability for such loss shall be the applicable Limit of Liability shown on the Declarations of this Coverage Section.

---

## VIII. LIMITS OF LIABILITY

(A)    The **Company's** maximum liability for each loss shall not exceed the Limit of Liability applicable to such loss, as set forth in Item 2 of the Declarations of this Coverage Section, regardless of the number of **Insureds** sustaining the loss.

(B)     If a direct loss is covered under more than one Insuring Clause, the maximum amount payable under this Coverage Section shall not exceed the largest applicable Limit of Liability of any such Insuring Clause.

(C)     All loss resulting from a single act or any number of acts of the same **Employee** or **Third Party**, and all loss whether such act or acts occurred before or during the **Policy Period,** will be treated as a single loss and the applicable Limit of Liability of this Coverage Section will apply, subject to Section VII Liability for Prior Losses.

## IX.     NON-ACCUMULATION OF LIABILITY

(A)     When there is more than one **Insured**, the maximum liability of the **Company** for loss sustained by one or all **Insureds** shall not exceed the amount for which the **Company** would be liable if all losses were sustained by any one **Insured**.

(B)     Regardless of the number of years this coverage remains in effect and the total premium amounts due or paid, the amount the **Company** shall pay for any loss shall not be cumulative from year to year or from **Policy Period** to **Policy Period.**

## X.     PROOF OF LOSS AND LEGAL PROCEEDINGS

(A)     Knowledge possessed by any **Insured** or **Discovery** shall be deemed knowledge possessed by or **Discovery** by all **Insureds**.

(B)     It is a condition precedent to coverage hereunder that, upon **Discovery**, the **Parent Corporation** will:

(1)     give written notice to the **Company** at the earliest practicable moment, and in no event later than ninety (90) days after such **Discovery;**

(2)     furnish a proof of loss with full particulars to the **Company** within six (6) months of such **Discovery**, including:

(a)     submission to examination under oath at the **Company's** request;

(b)     production of all pertinent records at such reasonable times and places as the **Company** shall designate; and

(3)     provide full cooperation with the **Company** in all matters pertaining to a loss or claim.

(C)     The **Parent Corporation** may offer a comparison between an **Insured Organization's** inventory records and actual physical count of its inventory to prove the amount of loss, only where an **Insured Organization** establishes wholly apart from such comparison that it has sustained a covered loss, caused by an identified **Employee**.

(D)     No **Insured** shall institute legal proceedings against the **Company**:

(1)     after two (2) years immediately following any **Discovery;** or

(2)     to recover a judgment or settlement against it or its bank resulting from **Forgery, Credit Card Fraud** or related legal expenses as set forth in Section VI Legal Expenses

Extension, after two (2) years immediately following the date upon which such judgment shall become final or settlement was entered.

---

### XI. VALUATION AND FOREIGN CURRENCY

The **Company** shall pay:

(A)   the least of:

    (1)   the actual market value of lost, damaged or destroyed **Securities** at the closing price of such **Securities** on the business day immediately preceding the day on which a loss is **Discovered**;

    (2)   the cost of replacing **Securities**; or

    (3)   the cost to post a Lost Instrument Bond;

    Such cost shall be paid by the **Company** on behalf of an **Insured**;

(B)   the cost of blank books, pages or tapes or other blank materials to replace lost or damaged books of account or other records;

(C)   the least of:

    (1)   the price paid by an **Insured** for the **Property**; or

    (2)   the cost to repair or replace **Property** with that of similar quality and value at the time the **Parent Organization** complies with Section X Proof of Loss and Legal Proceedings, regarding the furnishing of proof of loss; or

(D)   the United States of America dollar value of foreign currency based on the rate of exchange published in *The Wall Street Journal* on the day loss involving foreign currency is **Discovered**.

---

### XII. OTHER INSURANCE

If the **Insured** or any other party in interest in any loss covered by this Coverage Section has any bond, indemnity or insurance which would cover such loss in whole or in part in the absence of this Coverage Section, then this Coverage Section shall be null and void to the extent of the amount recoverable or received under such other bond, indemnity, or insurance; but this Coverage Section shall cover such loss, subject to its exclusions, conditions and other terms, only to the extent of the amount of such loss in excess of the amount recoverable or received under such other bond, indemnity or insurance.

Coverage Section:  ForeFront Portfolio Crime Coverage Section (Federal)

Effective date of
this endorsement: July 12, 2005

Company: Federal Insurance Company

Endorsement No. 1

To be attached to and
form a part of Policy No. 8181-1088

Issued to: LENATURE'S, INC. AND GLOBAL BEVERAGE SYSTEMS, INC.

---

SPONSORED PLAN ENDORSEMENT

In consideration of the premium charged, it is agreed that the term **Sponsored Plan**, as defined in Section II Definitions of the Coverage Section identified above, is amended to include the following plan:

Global Beverage, Inc. & LeNatures, Inc. 401K Plan

The title and any headings in this endorsement are solely for convenience and form no part of the terms and conditions of coverage.

All other terms, conditions and limitations of this policy shall remain unchanged.

*Robert Hamburger*

_____
Authorized Representative

**Chubb & Son**, div. of Federal Insurance Company
as manager of the member insurers of the
Chubb Group of Insurance Companies

# POLICYHOLDER
# DISCLOSURE NOTICE OF
# TERRORISM INSURANCE COVERAGE
### (for policies with no terrorism exclusion or sublimit)

You are hereby notified that, under the Terrorism Risk Insurance Act of 2002 (the "Act") effective November 26, 2002, this policy makes available to you insurance for losses arising out of certain acts of international terrorism. Terrorism is defined as any act certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States Mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

You should know that the insurance provided by your policy for losses caused by acts of terrorism is partially reimbursed by the United States under the formula set forth in the Act. Under this formula, the United States pays 90% of covered terrorism losses that exceed the statutorily established deductible to be paid by the insurance company providing the coverage. The portion of your policy's annual premium that is attributable to insurance for such acts of terrorism is: $ **-0-.**

If you have any questions about this notice, please contact your agent or broker.

# Notice of Loss Control Services

As a Chubb policyholder, you have loss prevention information and/or services available to you, as described in this Notice.

## Employment Practices Liability (EPL) Loss Prevention Services

- **Chubb EPL Loss Prevention Web Site**
  For information about the program, as well as a way to access many of our available services, go to http://csi.chubb.com/epllossprevention.

- **ChubbWorks.com**
  ChubbWorks.com is a web-based platform that offers multiple services including overviews of employment laws, sample employment policies and procedures, and on-line training. To gain immediate access to ChubbWorks go to **www.chubbworks.com** and register using your policy number.

- ***Employment Practices Loss Prevention Guidelines* Manual**
  Written by Seyfarth Shaw exclusively for Chubb, this manual provides an overview of key employment issues and offers proactive ideas for avoiding employment lawsuits. To order the *Employment Practices Loss Prevention Guidelines,* simply call **1.866.282.9001**, order 14-01-0061, and provide your mailing address.

- ***CheckPoint* Newsletter**
  *CheckPoint*, Chubb's periodic newsletter on employment issues will be mailed directly to you as it is published.

- **Loss Prevention Consultant Services**
  Chubb has developed a network of more than 120 law firms, human resources consulting firms, and labor economist/statistical firms that offer specialized services for employment issues. In addition to preferred rates for customers, Chubb will reimburse customers for 50% of the cost of the qualified services, up to 10% of the customer's insurance premium for the EPL coverage/insuring agreement. To access the network of consultants and learn more about the consultant services program, go to Chubb's EPL Loss Prevention Web site at http://csi.chubb.com/epllossprevention.

- **Toll-free Hot Line**
  Have a question on how to handle an employment situation? Simply call **1.888.249.8425** to access the nationally known employment law firm of Jackson Lewis Schnitzler & Krupman. We offer customers an unlimited number of calls to the hot line at no additional charge.

If you have any questions on the EPL Loss Prevention program, simply consult http://csi.chubb.com/epllossprevention or email csi-info@chubb.com.

14-02-6353 (Ed. 1/2005)

## Directors and Officers (D&O) Liability Loss Prevention Services

- **Directors and Officers Liability Loss Prevention Manual**
  Written by Dan A. Bailey exclusively for Chubb, *Directors and Officers Liability Loss Prevention* discusses general principles governing D&O liability and potential exposures for directors and officers. To order *Directors and Officers Liability Loss Prevention,* simply call **1.866.282.9001,** order 14-01-0035, and provide your mailing address.

  **Loss Prevention Guidelines for Independent Directors**
  Written exclusively for Chubb by Dan A. Bailey, this manual discusses roles played by independent directors, the increasing importance of independent directors, and corporate governance best practices. To order *Loss Prevention Guidelines for Independent Directors*, simply call **1.866.282.9001,** order 14-01-0679, and provide your mailing address.

## Fiduciary Liability Loss Prevention Services

- **Fiduciary Liability Loss Prevention Manual**
  Written by Dan A. Bailey exclusively for Chubb, *Fiduciary Liability Loss Prevention* discusses general principles governing fiduciary liability and reviews basic fiduciary duties under ERISA. To order *Fiduciary Liability Loss Prevention,* simply call **1.866.282.9001,** order 14-01-0039, and provide your mailing address.

## Miscellaneous Professional Liability Loss Prevention Services

- **What is E&O Liability Insurance Booklet**
  *What is E&O Liability Insurance* discusses general principles governing E&O liability and potential exposures facing professionals in their performance as professionals. To order *What is E&O Liability Insurance*, simply call **1.866.282.9001,** order 14-01-0157, and provide your mailing address.

## Internet Liability Loss Prevention Services

- **Internet Liability Loss Prevention Manuals**
  Chubb offers the *Safety'Net*[SM] *Risk Management Guide* and the *Chubb CyberRisk Handbook,* in an effort to educate clients on the exposures associated with online commerce and web sites. To order the *Safety'Net*[SM] *Risk Management Guide*, simply call **1.866.282.9001,** order 14-01-0488, and provide your mailing address. To order the *Chubb CyberRisk Handbook*, simply call **1.866.282.9001,** order 17-01-0093, and provide your mailing address.

## Crime Loss Prevention Services

- **White Collar Crime Loss Prevention Manual**
  Written by Ernst & Young exclusively for Chubb, *White Collar Crime: Loss Prevention through Internal Control* discusses general principles governing workplace crime exposures. To order *White Collar Crime: Loss Prevention through Internal Control,* simply call **1.866.282.9001,** order 14-01-0044, and provide your mailing address.

**Kidnap/Ransom & Extortion Loss Prevention Services**

- **Kidnap/Ransom & Extortion Loss Prevention Manuals**
  Chubb offers *Managing Terrorism Risks* and *Managing Travel Risks*, written exclusively for Chubb by the Ackerman Group, Inc., an international security consultant. To order the *Managing Terrorism Risks*, simply call **1.866.282.9001,** order 14-01-0179, and provide your mailing address. To order the *Managing Travel Risks*, simply call **1.866.282.9001,** order 14-01-0178, and provide your mailing address.

---------------------

The services provided are advisory in nature. While this program is offered as a resource in developing or maintaining a loss prevention program, you should consult competent legal counsel to design and implement your own program. No liability is assumed by reason of the services, access or information provided. All services are subject to change without notice.

**Notice to Purchasers of Employment Practices Liability Coverage or Fiduciary Liability Coverage**

As a purchaser of an Employment Practices Liability Coverage Section and/or a Fiduciary Liability Coverage Section, please note that the Company has the right and duty to defend any Claim (as such term is defined in the Definitions section of each applicable Coverage Section) covered by each applicable Coverage Section, unless such Coverage Section has been amended by written endorsement. Defense counsel for any such Claim shall be selected by the Company from the Company's list of approved defense firms. Please also note that, as a condition precedent to any right to coverage under each applicable Coverage Section, all Claims must be reported to the Company in writing in the manner and within the time provided in the Reporting and Notice provisions of such Coverage Section.

For a list of approved defense firms, please contact your insurance agent or broker, or access such list by using the following internet address:

      http://csi.chubb.com/panel_counsel.asp

Please note that the Company reserves the right to modify such list at any time without notice.