IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re LE-NATURE'S, INC., et al., <br>     *Debtors* <br><br> Federal Insurance Company, <br>     *Plaintiff* <br><br> v. <br><br> Le-Nature's, Inc., Debtor; R. Todd Nielsen as Chapter 11 Trustee for Le-Nature's, Inc.; and Gregory Podlucky, <br>     *Defendants* | Bankruptcy No. 06-25454 (MBM) <br> Chapter 11 <br> Jointly Administered <br><br> Chief Judge M. Bruce McCullough <br><br> Adversary Proc. No. 07-02138 (MBM) |

## SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL DISCOVERY REQUESTS AND TO DEEM REQUESTS FOR ADMISSION TO BE ADMITTED

Pursuant to Federal Rules of Civil Procedure 36 and 37(a)(2)(B), as incorporated by Federal Rules of Bankruptcy Procedure 7036 and 7037, Plaintiff Federal Insurance Company ("Federal") respectfully submits this supplemental memorandum in support of its motion for an order compelling Defendant Gregory Podlucky ("Podlucky") to respond to Federal's First Set of Document Requests to Gregory Podlucky and First Set of Interrogatories to Gregory Podlucky and for an order to deem Federal's First Set of Requests for Admissions to Gregory Podlucky to be admitted. Because this Court has personal jurisdiction over Podlucky and subject matter jurisdiction over all of Federal's claims against Podlucky, the Court has authority to order Podlucky to respond to Federal's outstanding discovery requests. Moreover, there is no mechanism by which the Court presently may decline the reference from the district court.

## I. FACTUAL BACKGROUND

In this adversary proceeding, Federal seeks a declaration that the ForeFront Portfolio Insurance Policy it issued to Le-Nature's, Inc. ("Le-Nature's") for the period from July 12, 2005 to September 12, 2006 (the "Policy") is void *ab initio* as to Le-Nature's and its former chief executive officer, Gregory Podlucky ("Podlucky"), based on material misrepresentations made by Podlucky in the application process. In the alternative, this proceeding seeks a determination of coverage issues under the Policy.

Podlucky and other former officers of Le-Nature's sought coverage under the Policy, including advancement of Defense Costs as defined in the Policy, for the claim asserted against them in *George K. Baum Capital Partners, L.P., et al. v. Le-Nature's, Inc., et al.*, Adversary Proceeding # 06-02756-MBM (the "*Baum* Action"). After Le-Nature's was placed in bankruptcy, Federal moved to lift the automatic stay, to the extent applicable, to advance Defense Costs, as defined in the Policy, pursuant to Non-Waiver and Interim Defense Funding Agreements to be signed by each of the *Baum* Action defendants. (Bankr. D.E. # 480).[1] This Court entered an order approving such advancements, subject to certain additional terms and restrictions, on March 20, 2007 (the "Advancement Order"). (Bankr. D.E. # 1021).

Based on coverage issues that arose from revelations about ongoing fraud at Le-Nature's, Federal also moved to lift the automatic stay to permit it to file a declaratory judgment action against Le-Nature's and Podlucky in the United States District Court for the Western District of Pennsylvania (the "District Court"). (Bankr. D.E. # 479). At a hearing on February 20, 2007, this

---

[1] Citations in the form "Bankr. D.E. #_" are to docket entries in the main bankruptcy proceeding, *In re Le-Nature's Inc. et al.*, Case No. 06-25454 (MBM). Citations to "Adv. D.E. #_" are to docket entries in this adversary proceeding.

Court questioned whether the proposed rescission action would constitute a non-core proceeding because it involved an asset of the debtor's estate. Transcript of Oral Argument at 14-18. (Bankr. D.E. # 907). This Court denied the motion without prejudice to Federal's right to file an adversary proceeding and to move for withdrawal of the reference to the Bankruptcy Court. Order dated February 20, 2007. (Bankr. D.E. # 842).

Federal filed this adversary proceeding on March 30, 2007 and simultaneously moved to withdraw the reference of the action. (Adv. D.E. # 1 (Adversary Complaint), 3-4 (Motion to Withdraw Reference and Memorandum in Support)). Podlucky opposed the motion to withdraw the reference, arguing to the District Court that (i) the entire case constituted a core proceeding because the Policy and its proceeds are assets of the estate, and (ii) even if not a core proceeding, the interests of judicial economy and uniformity of bankruptcy administration favored having this Court rule on all disputes related to the Policy. Memo. of Law in Support of Defendant Gregory Podlucky's Response in Opposition to Plaintiff's Motion to Withdraw the Reference, *Federal Ins. Co. v. Le-Nature's, Inc., et al.*, Case No. 07-00479-NBF (W.D. Pa.) at 5-8 (attached hereto as Exhibit "A"). By order dated May 30, 2007, the District Court declined to withdraw the reference as to the entire case and "reinstate[d] the reference of jurisdiction in this case to the Bankruptcy Court." Order on Federal Insurance Company's Motion to Withdraw Reference. (Adv. D.E. # 25).

## II. ARGUMENT

### A. Podlucky is Subject to This Court's Personal Jurisdiction.

Podlucky is clearly subject to personal jurisdiction in this Court. Podlucky admits that he is a citizen of Pennsylvania and that he founded and is the principal shareholder of Le-Nature's, a company with its principal place of business in Pennsylvania. Answer to Adversary Proceeding of Gregory J. Podlucky, ¶¶ 5,7. (Adv. D.E. #32). Service was made on Podlucky in Pennsylvania.

3

(*See* Adv. D.E. # 14). Indeed, Podlucky has never questioned the existence of jurisdiction over him in this or other proceedings within this bankruptcy.

Moreover, Podlucky has submitted to this Court's jurisdiction. Federal served the declaratory judgment complaint in this adversary proceeding on Podlucky on April 3, 2007. (Adv. D.E. # 14). On April 25, 2007, Federal, Podlucky, and Le-Nature's entered a stipulation staying discovery. (Adv. D.E. # 20). Podlucky answered Federal's declaratory judgment complaint on July 5, 2007, without raising any objection to this Court's personal jurisdiction. (Adv. D.E. # 32). Accordingly, Podlucky waived any claims regarding personal jurisdiction – and there is no indication that Podlucky disputes the Court's personal jurisdiction over him – because his appearance in this case without objection constitutes consent to this Court's personal jurisdiction. *See In re Grand Jury Proceedings*, 654 F.2d 268, 271 (3d Cir. 1981) ("objections to personal jurisdiction are waived if not timely asserted by motion or in the answer"); 16 James Wm. Moore *et al.*, *Moore's Federal Practice* § 108.53[2] (3d ed. 1997) (even a nonresident defendant who appears in an action without raising lack of personal jurisdiction is deemed to have consented to the court's jurisdiction.).

B. **This Court Has Subject Matter Jurisdiction Over the Declaratory Judgment Action, Including Issues Involving Podlucky.**

This Court unquestionably has jurisdiction over all claims in this adversary proceeding. Pursuant to 28 U.S.C. § 1334(b), federal district courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." In turn, 28 U.S.C. § 157(a) provides that "[e]ach district court may provide that any and all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." Pursuant to Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc entered in this Court dated October 16, 1984,

jurisdiction has been referred to this Court for all cases arising under title 11 or arising in or related to a case under title 11.

This Court has jurisdiction over the claims against Podlucky because they are "related to a case under" title 11. The bankruptcy court's "related to" jurisdiction is broad: a proceeding is "related to" a bankruptcy case if *"the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."* Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis in original). Proceedings "related to" the bankruptcy include (1) causes of action owned by the debtor which become property of the estate and (2) suits between third parties which have an effect on the bankruptcy estate. *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 n.5 (1995); *see also Zerand-Bernal Grp., Inc. v. Cox*, 23 F.3d 159, 161-62 (7th Cir. 1994) (noting that one purpose of Section 1334's reference to cases "related to" bankruptcy cases "is to force into the bankruptcy court suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate.")

Federal's claims against Podlucky are "related to" the bankruptcy case, and thus fall within this Court's broad bankruptcy jurisdiction, because (i) the Policy, and arguably its proceeds, are assets of the estate, (ii) this Court has jurisdiction over *all* claims involving an asset of the estate, including claims against Podlucky, and (iii) in addition, the claims against Podlucky are dispositive of the validity and existence *vel non* of that estate asset and will have a direct impact on the disposition of Le-Nature's rights in the Policy.

    **1.**    The Policy is Property of the Estate.

The Policy is an asset of the debtors' estate. *See, e.g., ACandS, Inc. v. Travelers Cas. and Sur. Co.*, 435 F.3d 252, 260 (3d Cir. 2006) ("It has long been the rule in this Circuit that insurance policies are considered part of the property of a bankruptcy estate."); *In re Global Industrial*

*Technologies, Inc.*, 303 B.R. 753, 762 (Bankr. W.D. Pa. 2004), *order modified by* No. 02-21626, 2004 WL 555418 (Bankr. W.D. Pa. Feb. 2, 2004) ("Debtor's interest in the Shared Insurance Policies is property of its bankruptcy estate."). In fact, according to the Official Committee of Unsecured Creditors (the "Committee"), the Policy "represents a potentially critical component of the Debtors' ability to confirm a plan that maximizes the recovery to their creditors." Obj. of the Committee to Federal's Mot. to Lift the Stay. (Bankr. D.E. # 638).

Moreover, at least two bankruptcy courts in Pennsylvania have held that the debtor has a property interest in the *proceeds* of a directors and officers policy where the policy provides coverage to the debtor itself for certain claims against it. *See In re Eastwind Group, Inc.*, 303 B.R. 743, 747 (Bankr. E.D. Pa. 2004) (D&O policy proceeds part of estate where policy covered securities claims made against the debtor and a claim alleging violations of securities laws was pending against the debtor); *In re Sacred Heart Hosp. of Norristown*, 182 B.R. 413, 419-20 (Bankr. E.D. Pa. 2004) ("Proceeds available for the Debtor's liability exposure are not segregated from the Proceeds available to the directors and officers. Thus, the Debtor is indeed an insured and has a sufficient interest in the Proceeds as a whole to bring them into the estate.").

Here, the D&O Coverage Section of the Policy includes "Corporate Liability Coverage," or entity coverage. Policy, D&O Coverage Section, Section I(C). In addition, the *Baum* Action names Le-Nature's as a defendant (although this claim against Le-Nature's is stayed by virtue of the automatic stay). Thus, under existing precedent in the bankruptcy courts in Pennsylvania, the Policy's proceeds may be deemed estate assets. Indeed, this Court has already exercised authority over the Policy and its proceeds, as applied to Podlucky, by imposing a cap and reporting requirements on payment of Defense Costs to Podlucky and other Le-Nature's officers. (Bankr. D.E. # 1021).

2. This Court has Jurisdiction over *all* Claims involving an Asset of the Estate.

This Court has jurisdiction over *all* claims involving the Policy, including those against Podlucky. "When the parties claiming an interest in certain property include the debtor, the bankruptcy court has jurisdiction to determine the interests of *all* of the parties concerned." *In re Lunan Family Restaurants*, 194 B.R. 429, 441 (Bankr. N.D. Ill. 1996) (emphasis added); *see also MacArthur Co.*, 837 F.2d at 92 (noting that the claims of third parties attempting to collect from the proceeds of the debtor's insurance policies "are inseparable from [the debtor's] own insurance coverage and are consequently well within the Bankruptcy Court's jurisdiction over [the debtor's] assets"); *In re Davis*, 730 F.3d 176, 183 (5th Cir. 1984) (rejecting claim that direct actions by third parties against debtor's insurers are not reasonably related to the bankruptcy proceedings and thus finding that bankruptcy jurisdiction existed); *In re Muller*, 72 B.R. 280, 284 (C.D. Ill. 1987) ("[W]hen several parties, including the debtor, claim an interest in certain property, it is within the bankruptcy court's jurisdiction to determine the interests of all of the parties concerned" and noting that "the fact that the court was required to adjudicate the rights of [third] parties . . . did not move the proceeding outside the court's jurisdiction."). Thus, this Court has subject matter jurisdiction over *all* claims in this proceeding, including the claims against Podlucky.

3. The Allegations against Podlucky are Dispositive of the Claims Involving the Debtor.

In addition to the case law holding that the bankruptcy court's jurisdiction includes a determination of the interests of all parties claiming a right to property of the estate, subject matter jurisdiction exists in this case because determination of the issues raised in Federal's claims against Podlucky are dispositive of the issues raised in Federal's claims against Le-Nature's. Key claims against Podlucky and Le-Nature's turn on the allegations against Podlucky, including the allegations

7

that he knowingly, or in bad faith, made false statements in the Policy application. The Policy specifies that Podlucky's knowledge is imputed to Le-Nature's. Policy, General Terms and Conditions, Section XII ("facts pertaining to and knowledge possessed by the Chief Financial Officer, President, Chief Executive Officer or Chairperson of any **Insured Organization**[2] or any other individual signing such application(s) shall be imputed to any **Insured Organization** for the purpose of determining if coverage is available"). Thus, the determination whether Podlucky knowingly or in bad faith provided false information on the Policy application, thereby rendering the Policy void *ab initio*, is dispositive of whether the Policy should be rescinded as to the debtor as well.

    **4.**  Judicial Economy Counsels in Favor of Keeping Podlucky in this Case.

If this Court were to find that it lacked authority over Podlucky, Federal would be required to pursue its claims in two separate forums: against Le-Nature's in this action and against Podlucky in another court. Adjudication of the same dispositive issues relevant to the instant case in another forum would result in piecemeal adjudication, potentially inconsistent judgments, and a waste of judicial resources. In drafting Title 11, "Congress was concerned with the inefficiencies of piecemeal adjudication of matters affecting the administration of bankruptcies and intended to give federal courts the power to adjudicate *all* matters having an effect on the bankruptcy." *Matter of Baudoin*, 981 F.2d 736, 740 (5th Cir. 1993) (emphasis added) (quoting *Wood*, 825 F.3d at 92). These concerns weigh in favor of the resolution of the claims against Le-Nature's *and* Podlucky in a single proceeding to avoid the possibility of inconsistent rulings and wasted judicial resources.

Adjudicating the allegations against Podlucky in separate proceedings would also raise

---

[2] Terms appearing in bold herein appear in bold and are defined in the Policy.

potential collateral estoppel issues for the debtor. *See In re Johns-Manville Corp.*, 40 B.R. 219 (S.D.N.Y. 1984) (bankruptcy court determined that insurance policies were property of the bankruptcy estate and refused to permit direct third-party actions against the insurer because the insured may "be collaterally estopped on issues of policy coverage and liability" and noted that resolution of all insurance claims in the bankruptcy court was the preferable solution because "'[f]ragmenting . . . relevant policy issues by permitting various forums to decide the issues will frustrate prompt and effective formulation of a plan of reorganization.'") (citation omitted). Thus, a separate proceeding could impact the rights and obligations of the debtor, regardless of whether it is a formal party to the action.

This Court faced similar issues in *In re Global Industrial Technologies, Inc.*, in which a Chapter 11 debtor filed a proceeding in this Court against several of its insurers seeking declarations concerning the insurers' obligation to provide indemnification for asbestos-related liabilities of the debtor. *In re Global Industrial Technologies, Inc.*, 303 B.R. 753, 762 (Bankr. W.D. Pa. 2004), *order modified by* No. 02-21626, 2004 WL 555418 (Bankr. W.D. Pa. Feb. 2, 2004). Several of the insurers filed a separate declaratory judgment action in New York involving the relevant insurance policies, but did not name the debtor as a defendant in the complaint. The debtor filed a motion arguing that the New York Action violated this court's order staying litigation involving the debtor. The insurers claimed that the New York Action did not name the debtor and thus did not implicate the bankruptcy court's jurisdiction. This court disagreed, holding that: "A declaratory judgment action against a debtor is an 'act to . . . exercise control over property of the estate,' insofar as it seeks to affect the insurance policies which are estate property. The fact that the action does not name Debtor is not dispositive [because] any judgment rendered in the New York Action will necessarily have an impact on the interests of Debtor in, to and under the Shared Insurance Policies. Thus, although Debtor is

not a named defendant to the New York Action, its interests in the Shared Insurance Policies are sufficiently intertwined with those of [the co-insured] to make it a necessary real party in interest in that action." *Id.* at 760-62. Accordingly, the court found that the New York Action was a violation of the automatic stay and void *ab initio*.

Similarly, Federal's claims against Podlucky have a real and significant impact on the estate's rights under the Policy. A determination whether Podlucky knowingly or in bad faith made false statements on the Policy application necessarily implicates the validity of the Policy as to Le-Nature's because of the Policy's provision imputing Podlucky's knowledge to Le-Nature's. All counts in Federal's declaratory judgment action implicate property of the estate because they involve a determination of the validity of the Policy as to Le-Nature's. Accordingly, this Court has subject matter jurisdiction over *all* claims in this case.

### C. This Court Possesses the Authority to Order Podlucky to Respond to Federal's Unanswered Discovery Requests.

The trial court has inherent and broad authority to regulate discovery for the parties before it. 27 C.J.S. Discovery § 3 (2007); *see also U.S. v. $1,322,242.58*, 938 F.2d 433, 436 (3d Cir. 1991) (discussing trial court's order granting motion to compel discovery). Indeed, this Court recently entered an order compelling Merrill-Lynch to produce documents to the Trustee even though it is not a party to any adversary proceeding. (Adv. D.E. 1736). Because this Court has personal jurisdiction over Podlucky and subject matter jurisdiction over the claims raised in Federal's declaratory judgment action against Podlucky, the Court has the authority to require Podlucky to comply with the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure and to respond to Federal's discovery requests.

### D. The District Court Referred this Matter to the Bankruptcy Court and There is No Mechanism for this Court to Decline the Reference.

Finally, no mechanism exists for this Court to decline the reference because the District Court specifically reinstated the reference of jurisdiction to this Court. The Bankruptcy Code invests the District Court with sole jurisdiction to decide whether to withdraw the reference "in whole or in part, [of] any case or proceeding referred under this section. . . ." 28 U.S.C. § 157(d); *see TTS, Inc. v. Stackfleth, (In re Total Technical Servs., Inc.)*, 142 B.R. 96, 99-100 (D. Del. 1992). The reference statute is a "one-way street' from the district court to the bankruptcy court." *In re Porter*, 295 B.R. 529, 545 (Bankr. E.D. Pa. 2003) (citations omitted); 9 Collier on Bankruptcy, ¶ 5011.01[1]. The District Court heard arguments from both defendants in this case and reinstated the reference to this Court with respect to Podlucky as well as Le-Nature's. No mechanism exists for this Court to decline that reinstated reference.

### III. CONCLUSION

This Court has personal jurisdiction over Podlucky and subject matter jurisdiction over the counts asserted against Podlucky in Federal's declaratory judgment action. Accordingly, the Court has the authority to order Podlucky to respond to Federal's discovery requests. Moreover, there is no mechanism by which the Court could decline the reference reinstated by the district court. Therefore, for the reasons stated in Federal's motion to compel and memorandum in support, Federal respectfully requests that the Court grant its motion.

> Respectfully submitted,
>
> /s/ Dennis St. J. Mulvihill
> Dennis St. J. Mulvihill, Esquire
> Mark A. Martini, Esquire
> ROBB LEONARD MULVIHILL
> 2300 One Mellon Center
> Pittsburgh, PA 15219
> 412-281-5431

*Attorneys for Movant Federal Insurance Company*

Of Counsel:

Daniel J. Standish, Esquire
Charles C. Lemley, Esquire
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000
(202) 719-7049 (facsimile)

*Attorneys for Movant Federal Insurance Company*

Dated: December 10, 2007