IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Bankruptcy No. 06-25454-MBM |
| LE-NATURE'S, INC., | |
| Debtor. | Chapter 11 |
| FEDERAL INSURANCE COMPANY, | Adversary No. 07-02138-MBM |
| Plaintiff, | Doc. No. |
| v. | Related to Doc. No. 47 |
| LE-NATURE'S, INC., R. TODD NIELSEN, CHAPTER 11 TRUSTEE FOR LE-NATURE'S, INC., AND GREGORY PODLUCKY, | |
| Defendants. | |
| GREGORY J. PODLUCKY, | |
| Movant, | |
| v. | |
| FEDERAL INSURANCE COMPANY, | |
| Respondent. | |

**MEMORANDUM OF LAW IN SUPPORT OF RESPONSE OF GREGORY J. PODLUCKY IN OPPOSITION TO FEDERAL INSURANCE COMPANY'S MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS AND TO DEEM REQUESTS FOR ADMISSIONS TO BE ADMITTED AND MOTION TO WITHDRAW ADMISSIONS**

AND NOW, comes the Defendant Gregory J. Podlucky ("Podlucky") by and through his attorneys, Robert O Lampl and John P. Lacher, and files this **MEMORANDUM OF LAW IN SUPPORT OF RESPONSE OF GREGORY J. PODLUCKY IN OPPOSITION TO FEDERAL INSURANCE COMPANY'S MOTION TO**

1

**COMPEL RESPONSES TO DISCOVERY REQUESTS AND TO DEEM REQUESTS FOR ADMISSIONS TO BE ADMITTED AND MOTION TO WITHDRAW ADMISSIONS** as follows:

## I. INTRODUCTION

Gregory J. Podlucky ("Podlucky") is the founder, majority shareholder and former CEO and Chairman of the Board of Directors of the Debtor. On or about July 12, 2005, and in the ordinary course of business, the Board authorized the bid and purchase of new policies of directors and officers errors and omissions and general liability insurance. Said policies were purchased from Federal Insurance Company ("Federal"). The policies provide for aggregate coverage in the amount of $7.5 million, and cover claims arising out of, inter alia, any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by the Debtor and/or its officers and directors.

Shortly after the renewal of the policies, the Debtor was forced into bankruptcy and its financial dealings have been the subject of intense scrutiny. Federal is faced with the likelihood of substantial claims under the aforementioned policies, both from third parties asserting damage claims as well as certain of the officers and directors of the Debtor who have requested the tender of a defense to various civil actions and possible criminal prosecution. Podlucky is the focus of an ongoing criminal investigation, and has been the subject of a number of media accounts alleging various financial irregularities and improprieties.

Federal commenced this Adversary Proceeding by Complaint on March 30, 2007, seeking a Declaratory Judgment that a policy of insurance issued by Federal

should be declared void ab initio, referencing various policy provisions relating to the bona fides of information set forth on the policy application and the policy, and averring a breach thereof by Podlucky. As substantiation for its averments of misconduct proscribed by said policy and application provisions, Federal has regurgitated a laundry list of media accounts of wrongdoing allegedly committed by Podlucky. Podlucky has not been charged with any crime and no averment of wrongdoing has ever been adjudicated in any forum. The averments pled by Federal against Podlucky allege a series of wrongful acts which, if true, could constitute possible criminal conduct on the part of Podlucky. Federal submitted no evidence or documentation in support of its contentions, but instead raised a boilerplate recitation of a number of salacious media accounts, unattributed statements and unconfirmed representations alleging a host of potentially criminal actions by Podlucky.

Further, the aforesaid policies of insurance provide the Officers and Directors of the Debtor with coverage in the event of criminal prosecution, and require Federal to tender its insureds a defense thereto. Certain of the Officers and Directors of the Debtor have demanded that Federal tender a defense to possible criminal prosecution, but Federal has denied coverage and taken the position that coverage is not required to be extended unless and until actual criminal charges are filed against its insureds.

Podlucky in his Answer to Complaint averred that the allegations set forth therein have never been adjudicated or proved, and that until such adjudication, constitute nothing more than allegations parroted from third parties.

Podlucky is widely reported to be the subject of an ongoing, high-profile criminal investigation being conducted by the Office of the United States Attorney for the

Western District of Pennsylvania, the Internal Revenue Service and postal inspectors for the United States Postal Service. Podlucky has retained criminal defense counsel to represent him with respect to said investigation, to-wit: Thomas R. Ceraso.

Podlucky's civil counsel is under instruction to consult with criminal defense counsel prior to filing any documents in the various civil cases in which he is involved.

On September 19, 2007, Federal served Podlucky with discovery, in the form of a First Set of Discovery Requests, First Set of Interrogatories and First Set of Requests for Admissions. As is known to Federal, Podlucky has no documents responsive to Federal's document request, as he has been prohibited from accessing those documents maintained at the Debtor's facility and all of the documents in his possession relating to the Debtor have been seized by various investigating agencies. Further, even the hard drive of his computer was seized by said investigators.

Federal's Interrogatories and Requests for Admissions follow the averments of its Complaint, in which various unsubstantiated averments of criminal misconduct are set forth.

It is not possible to respond to Federal's discovery requests without compromising the Constitutional rights against self-incrimination guaranteed to him under the Fifth Amendment. Federal has attempted to circumvent those rights and obtain an unfair and improper advantage in these proceedings by propounding discovery requests, including Requests for Admissions, that specifically require him to respond directly to allegations of criminal conduct, even while Federal has full knowledge that an ongoing criminal investigation is underway.

Federal's Interrogatories and Requests for Admissions require Podlucky, in a civil proceeding, to answer directly averments of criminal conduct in the midst of an ongoing criminal investigation. It is not possible for Podlucky to respond thereto without adversely impacting his Fifth Amendment Constitutional rights.

Federal is attempting thereby to place Podlucky in a dilemma, where he faces a choice of compliance with civil discovery requests or compromising his Fifth Amendment Constitutional rights. Upon advice of counsel, Podlucky has refused to respond to Federal's Requests for Admissions.

To the extent that the Court is inclined to grant the Motion to Compel Podlucky to respond to Federal's discovery requests, Podlucky shall respectfully comply in the form of an assertion of his Fifth Amendment Constitutional rights.

Federal now seeks to prove its case not by adjudication on the merits, but by means of a procedural artifice intended to benefit it in this civil action by means of compromising Podlucky's Constitutional rights. In order to preclude Federal successfully pursuing this course, Podlucky has filed a Motion to Withdraw Admissions.

## STATEMENT OF THE QUESTION PRESENTED

**Should Gregory J. Podlucky's Motion to Withdraw Admissions be granted?**

**Suggested Answer: Yes.**

## ARGUMENT

The criteria for the Court to weigh in determining whether a party should be able to withdraw admissions is set forth in the case of *Dwight v. Girard Medical Center*, 154 Pa. Commw. 326, 623 A.2d 913 (1993): "Withdrawal of admissions should be granted where upholding the admission would practically eliminate any presentation of the

merits of the case; where withdrawal would prevent manifest injustice; and where the party who obtained the admissions failed to prove that withdrawal would result in prejudice to that party. *Westmoreland v. Triumph Motorcycle Corp.*, 71 F.R.D. 192 (D.Conn.1976). The test of prejudice turns on whether a party opposing the withdrawal is rendered less able to obtain the evidence required to prove the matters which had been admitted. *Teleprompter of Erie, Inc. v. City of Erie*, 567 F.Supp. 1277 (W.D.Pa.1983); *Rabil v. Swafford*, 128 F.R.D. 1 (D.D.C.1989).

Further, the burden of proof clearly rests upon the party opposing the withdrawal to demonstrate actual prejudice oif the withdrawal is permitted. "Under Fed. R. Civ. P. 36(b) it is the burden of the party who obtained the admission to demonstrate that allowing withdrawal would result in prejudice. This general rule, however, is subject to the provisions of Fed. R. Civ. P. 16 governing the amendment of a pretrial order. Under Rule 16, the order following a final pretrial conference shall be modified only to prevent manifest injustice. That rule applies to the amendment of a response to a request for admission only when the admission is made part of a final pretrial order." *Eckell v. Borbidge*, 114 B.R. 63 (E.D.PA 1990).

The first two criteria therefore clearly favor the granting of the relief requested by Podlucky. The admissions sought by Federal would in all likelihood be utilized by Federal to support a subsequent Motion for Summary Judgment. The requests for admissions propounded by Federal are tailored to fit within the exclusions it asserts under the application and policy provisions. If those averments are deemed to be admitted, Federal will claim to have proven every element of its case, thereby

precluding trial on the merits. The first criterion to be evaluated weighs in favor of granting the withdrawal.

As to the second, Federal has not averred, and cannot aver, actual prejudice to it in the event the admissions are withdrawn. Federal has served discovery requests upon the entity, which can respond through a designated representative without fear of criminal prosecution. The proceedings are at an early stage, no depositions have been sought or scheduled, and Federal is free to obtain the information it seeks through discovery upon the Debtor or upon other individuals it believes will support the contentions raised in its Complaint whose Fifth Amendment rights are not implicated or adversely affected. Podlucky has no such capacity.

"Unlike individuals a corporation has no right against self-incrimination. When a discovery request is served on a corporation, the corporation must designate an agent who without fear of self incrimination can provide the requested information which is available to the corporation. The corporation may not satisfy its discovery obligations simply by pointing to an agent about to invoke his constitutional privilege. It would indeed be incongruous to permit a corporation to select an individual to verify the corporation's answers, who because he fears self incrimination may thus secure for the corporation the benefits of a privilege it does not have." *The Salvation Army v. Dumont Export Corporation*, 1986 U.S. Dist. LEXIS 1986 (E.D.PA 1986). In the instant case the converse is true. It is wholly improper for Federal to seek discovery from Podlucky, who has been prohibited from accessing any documentation relating to the Debtor, and has had his personal records and files seized, while the same requests can be tendered to the Debtor and others without posing similar jeopardy.

Further, despite the fact that Rule 36 purports to limit the effect of admissions to the pending action in which they are sought, the avalanche of publicity that would inevitably follow a Podlucky admission of having engaged in what could be construed to constitute criminal acts would inevitably taint him and prejudice him, not only with respect to the pending criminal investigation and possible criminal prosecution, but with respect to a number of other civil matters that are pending against Podlucky.

Thus, the criteria of prejudice weighs heavily in favor of granting the requested relief, not only because of no showing of actual prejudice to Federal, which has the burden of proof with respect to a showing of actual prejudice, but because of the strong likelihood of actual prejudice to Podlucky if the admissions are not withdrawn.

Finally, the Court may look to the reasons for failure of the party against whom admissions are sought to respond. In the instant case, Podlucky has been advised by his counsel to avoid, where possible, formally invoking his Fifth Amendment rights where possible, to avoid both the storm of adverse publicity sure to follow such an act, and to minimize the possibility of a series of such admissions arising in the course of a plethora of civil actions filed or to be filed against Podlucky. Under the circumstances, his criminal counsel has advised constraint until the likelihood of criminal prosecution can be ascertained more specifically. Podlucky's civil counsel in this case has been informed, however, that Podlucky's criminal defense counsel has instructed Podlucky to invoke his Fifth Amendment rights with respect to any civil proceeding which implicates those rights or alleges conduct which might be construed as constituting criminal conduct, and will shortly be providing written confirmation of that fact for filing in all such civil proceedings.

The Honorable R. Stanton Wettick considered the interplay between the obligations attendant to civil discovery and the implications to a party's Fifth Amendment rights, and determined that the well-established principles of Federal law require that the balance be weighted in favor of the Fifth Amendment rights. "While the United States Supreme Court does not allow the imposition of sanctions in civil proceedings that make the assertion of the Fifth Amendment privilege too costly (*Spevack v. Klein*, 87 S.Ct. 625, 628 (1967)), the assertion of the Fifth Amendment privilege in civil proceedings may cause some disadvantage to the party who withholds relevant information (*Baxter v. Palmigiano*, 96 S.Ct. 1551, 1557-58 (1976)). In *Mitchell v. United States*, 119 S.Ct. 1307, 1315 (1999) (citations omitted), the court said: "This court has recognized 'the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them,' at least where refusal to waive the privilege does not lead 'automatically and without more to [the] imposition of sanctions.' . . . The rule allowing invocation of the privilege, though at the risk of suffering an adverse inference or even a default, accommodates the right not to be a witness against oneself while still permitting civil litigation to proceed."

While federal case law, based on these rulings of the United States Supreme Court, permits sanctions (frequently referred to as "remedies") to be imposed in civil actions based on a party's assertion of the Fifth Amendment privilege, such sanctions must be limited to what is necessary to prevent another party from being unduly disadvantaged. Sanctions may not be automatically imposed whenever a party asserts his or her Fifth Amendment protections in pleadings or responses to discovery requests.

The bottom line in civil actions is that a price can be paid for exercising the Fifth Amendment privilege provided it is tied to the potential harm to other parties from the failure to provide relevant information. In *Serafino v. Hasbro Inc.*, 82 F.3d 515, 518 (1st Cir. 1996), the court, in upholding the trial court's dismissal of the plaintiff's complaint because one of the plaintiffs invoked his Fifth Amendment privilege, described the standard as follows:

"The Supreme Court has indicated that the assertion of the privilege may sometimes disadvantage a party. See *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1557-58, 47 L.Ed.2d 810 (1976) (allowing adverse inferences to be drawn from a *civil* party's assertion of the privilege); *Flint v. Mullen*, 499 F.2d 100, 104 (1st Cir. 1974) ('Not every undesirable consequence which may follow from the exercise of the privilege against self-incrimination can be characterized as a penalty.'). We think that in the civil context, where, systemically, the parties are on a somewhat equal footing, one party's assertion of his constitutional right should not obliterate another party's right to a fair proceeding. In other words, while a trial court should strive to accommodate a party's Fifth Amendment interests, see *United States v. Parcels of Land*, 903 F.2d 36, 44 (1st Cir. 1990), it also must ensure that the opposing party is not unduly disadvantaged. See *Gutierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 577 (1st Cir. 1989) (affirming district court's refusal to allow defendant to testify at trial when he asserted Fifth Amendment privilege during discovery). After balancing the conflicting interests, dismissal may be the only viable alternative.

"We reiterate that the balance must be weighed to safeguard the Fifth Amendment privilege: the burden on the party asserting it should be no more than is

10

necessary to prevent unfair and unnecessary prejudice to the other side. See *S. E. C. v. Graystone Nash Inc.*, 25 F.3d 187, 192 (3d Cir.1994); *Wehling*, 608 F.2d at 1088. As correctly delineated by the district court in this case, 'the Fifth Amendment privilege should be upheld unless defendants have substantial need for particular information and there is no other less burdensome effective means of obtaining it.' See *Black Panther Party v. Smith*, 661 F.2d 1243, 1272 (D.C. Cir. 1981), *vacated mem.*, 458 U.S. 1118, 102 S.Ct. 3505, 73 L.Ed.2d 1381 (1982) (enunciating similar balancing approach)." *Haas v. Bowman*, 62 Pa. D. & C. 4th 1 (2003).

In the instant case, every criteria to be evaluated by the Court weighs in favor of permitting Podlucky to withdraw any admissions he is deemed to have made due to his failure to timely respond to Federals, Requests for Admissions. To the extent that he has not previously formally invoked his Fifth Amendment rights upon advice of counsel, he has done so in his Response in Opposition to Federal's Motion. The deeming of Federal's Requests for Admissions to be admitted would eviscerate trial on the merits in this case. Federal has shown no actual prejudice, and has the clear burden with respect to such a showing. Podlucky has shown actual prejudice to him of the effect of deemed admissions of criminal or potentially criminal conduct. And Federal has a less burdensome alternative means to obtain the information sought in the discovery requests propounded upon Podlucky.

## III. CONCLUSION

For the reasons set forth hereinabove, Podlucky's Motion to Withdraw Admissions should be granted.

Respectfully Submitted,

*/s/ Robert O Lampl*
ROBERT O LAMPL
Pa. I.D. # 19809

JOHN P. LACHER
Pa. I.D. # 62297
960 Penn Avenue
Suite 1200
Pittsburgh, PA  15222
(412) 392-0330 (phone)
(412) 392-0335 (facsimile)
Counsel for Defendant Gregory J. Podlucky

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Bankruptcy No. 06-25454-MBM |
| LE-NATURE'S, INC., | |
| Debtor. | Chapter 11 |
| FEDERAL INSURANCE COMPANY, | Adversary No. 07-02138-MBM |
| Plaintiff, | Doc. No. |
| v. | Related to Doc. No. 47 |
| LE-NATURE'S, INC., R. TODD NIELSEN, CHAPTER 11 TRUSTEE FOR LE-NATURE'S, INC., AND GREGORY PODLUCKY, | |
| Defendants. | |
| _____ | |
| GREGORY J. PODLUCKY, | |
| Movant, | |
| v. | |
| FEDERAL INSURANCE COMPANY, | |
| Respondent. | |

## CERTIFICATE OF SERVICE

I, Robert O Lampl, do hereby certify that I served a true and correct copy of the foregoing **MEMORANDUM OF LAW IN SUPPORT OF RESPONSE OF GREGORY J. PODLUCKY IN OPPOSITION TO FEDERAL INSURANCE COMPANY'S MOTION TO COMPEL RESPONSES TO DISCOVERY REQUESTS AND TO DEEM REQUESTS FOR ADMISSIONS TO BE ADMITTED AND MOTION TO WITHDRAW ADMISSIONS**

13

upon the following, by electronic service and/or hand delivery, on the 11th day of December, 2007:

Dennis St. J. Mulvihill
Mark A. Martini
Robb, Leonard Mulvihill
2300 One Mellon Center
Pittsburgh, PA 15219

James Joseph
Spilman Thomas & Battle, PLLC
One Oxford Center, Suite 3440
301 Grant Street
Pittsburgh, PA 15219

David Rudov
Rudov & Stein, P.C.
First & Market Building
100 First Avenue, Suite 500
Pittsburgh, PA 15222

/s/ *Robert O Lampl*
Robert O Lampl
Pa. I.D. # 19809

John P. Lacher
Pa. I.D. # 62297

960 Penn Avenue
Suite 1200
Pittsburgh, PA 15222
(412) 392-0330
(412) 392-0335

Counsel for Defendant Gregory J. Podlucky